## Keller *v.* N. J. Fidelity & Plate Glass Ins. Co., Appellant.

Argued December 4, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Error assigned,* inter alia, was refusal of motion for judgment for defendants n. o. v., quoting record.

*Charles A. Wolfe,* with him *Lucien B. Carpenter* and *Robert T. McCracken,* for appellant.—The alleged guaranty was not a valid obligation of defendant.

DeVoe had no authority to bind defendant on the alleged guaranty: Long v. Coal & Nav. Co., 292 Pa. 164; Humphrey v. Brown, 291 Pa. 53; Interstate Securities Co. v. Bank, 231 Pa. 422; Hartig v. Ice Co., 290 Pa. 21.

Plaintiffs did not aver any facts which would sustain an estoppel, and the issue of estoppel should not, therefore, have been left to the jury.

*George J. Edwards, Jr.,* for appellees.—The guarantee was a valid obligation of defendant: Keller v. Ins. Co., 299 Pa. 315; Seaman v. Husband, 256 Pa. 471; Parkinson v. City of Parker, 85 Pa. 313; Penn Nat. Gas Co. v. Cook, 123 Pa. 170; Turnpike, etc., Co. v. R. R., 194 Pa. 144.

DeVoe had authority to bind defendant by the guaranty: Keller v. Ins. Co., 299 Pa. 315.

The question of estoppel was involved in this case: Kress House M. Co. v. Hogg Co., 263 Pa. 191; Electric Reduction Co. v. Steel Co., 276 Pa. 181; Hoffman v. Ins. Co., 274 Pa. 292.

Failure to reply to plaintiffs' notice and retention of the consideration if found by the jury would establish an estoppel against defendant: Thomas v. Assn. Corp., 288 Pa. 325; Penn Nat. Gas Co. v. Cook, 123 Pa. 170; Presbyterian Board v. Gilbee, 212 Pa. 310; Sokoloff v. Fidelity & Casualty Co., 288 Pa. 211.

OPINION BY MR. JUSTICE SIMPSON, January 5, 1932:

Prior to April 23, 1927, plaintiffs had furnished to the American Academy of Astrology, Inc., hereinafter called the Academy, certain labor and materials and had been paid therefor by a check which was duly honored. The Academy was then also negotiating with them for the manufacture of other furniture and for other work to be done upon its property, but was not able to pay cash therefor and plaintiffs were not willing to extend credit for the amount involved. On June 15, 1927, one of plaintiffs had a further consultation with the Academy's officials on this subject, and, in order to induce plaintiffs to furnish the additional labor and materials desired, they handed to him a note for $10,000, dated April 23, 1927, payable eight months after date, together with two documents, bearing the same date, and also a letter stating that the note was given "in payment for any furniture or work that you may do or may have done" for the Academy.

One of the documents referred to was a paper by which the New Jersey Fidelity and Plate Glass Insurance Company, defendant herein, "in consideration of an agreed premium, receipt of which is hereby acknowledged......unconditionally guarantees the payment of the principal and interest of said [$10,000] note at maturity." This document was executed over the seal of the defendant corporation and was signed by "George

A. DeVoe, Attorney in Fact." Admittedly, the corporation had authority to issue such a guaranty, could appoint an attorney in fact for the purpose, and had, on October 8, 1925, duly appointed DeVoe as such attorney, without limitation as to time. The other paper was a certified copy of DeVoe's appointment as attorney in fact, duly executed over the corporate seal, which certified also that the appointment "remains in full force and effect." It stated that the power of attorney gave to DeVoe full authority to issue such contracts of guaranty, which "shall be binding upon [defendant] as fully and amply to all intents and purposes, as if they had been signed by its president, sealed with the common seal and duly attested by its secretary, hereby ratifying all the acts of said attorney in fact, pursuant to the power herein given." This was the usual method by which defendant certified to the authority of its agents under circumstances like the present. Defendant admits that if this was all there was to the case, it would be liable to plaintiffs in this action, but avers that the power of attorney to DeVoe was cancelled May 21, 1927, which was after the date (April 23, 1927), specified in the note and accompanying documents, but before their delivery to plaintiffs on June 15, 1927. Because of this, defendant contends it might have been found as a fact that the guaranty was delivered by DeVoe to the Academy after the time his agency was cancelled. Conceding this to be so, the question at once arises, Who is to determine the fact? The only possible answer is the jury; and they have found it against defendant's contention. DeVoe was not present when the Academy delivered the guaranty to plaintiff, and, so far as appears, he had nothing to do with it after its date of April 23, 1927, which, presumptively, was the time it was both executed and delivered to the Academy.

At the first trial, the jury was directed to render a verdict for defendant, but the court in banc reversed that ruling and granted a new trial. From this order de-

fendant appealed, but we affirmed it: Keller v. N. J. Fidelity, etc., Ins. Co., 299 Pa. 315. On the retrial, now under review, the learned president judge told the jury, in a careful and impartial charge, of which defendant cannot justly complain, that their verdict must be for defendant, unless they found either (1) that the letter of attorney to DeVoe was not revoked until after June 15, 1927, when the guaranty sued on was delivered to plaintiffs; or (2) defendant was estopped to deny its liability on the guaranty. If there was any error in this, it was in taking away from the jury the right to consider whether plaintiffs were not justified in acting on the belief that the guaranty was delivered to the Academy on April 23, 1927, the day of its date; but if this was an error, it was one favorable to defendant of which they do not specifically complain, and if they did they would not be heeded: Roberts v. Cauffiel, 283 Pa. 64; Pulling v. Yeager, 301 Pa. 7. The jury rendered a verdict for plaintiffs for the $10,000 with interest, the court below dismissed defendant's motions for a new trial and for judgment non obstante veredicto and entered judgment on the verdict, and defendant then took the present appeal. Upon which of the grounds stated, the jury based their verdict we do not know, and hence must consider each of them to determine whether or not any error appears in its submission to the jury.

The first presents but little difficulty. Defendant's only evidence as to the date of the cancellation of the power of attorney was the testimony of one of its officers, who said that, on May 21, 1927, it was returned to him by DeVoe, and he then stamped on it the words "5-21-27 Cancelled V. H." Defendant contends that, while it is true, as the court below said, that the jury is the only tribunal which can determine whether or not a defense is established when it is based on testimony alone, yet this is not so "where, in addition to the uncontradicted oral evidence on the side of defendant, showing no liability, there is admittedly genuine or un-

attacked documentary evidence which relieves defendant from the possibility of liability," and for this they cite Hartig v. American Ice Co., 290 Pa. 21, 31, and kindred cases. That principle has no relevancy here, however, since there is neither "uncontradicted oral evidence on the side of defendant," nor "admittedly genuine or unattacked documentary evidence" to sustain this defense. The supposed "documentary evidence" consists only of the returned power of attorney and the words stamped on it as above stated. This is far from the character of "documentary evidence" referred to in the decisions. For its validity it depended on "V. H.," who said he stamped the word and figures on the power of attorney when it was returned by DeVoe, and the jury, not the court, was the tribunal to determine whether or not that testimony was true: Second Nat. Bank v. Hoffman, 229 Pa. 429; Hagan Lumber Co. v. Duryea School Dist., 277 Pa. 345; Hartig v. American Ice Co., supra.

At the oral argument we were much impressed by the fact that the guaranty and note were each dated April 23, 1927, but were not delivered until June 15, 1927. Further consideration, however, compels the conclusion that the effect of this was also a matter for the jury and not for the court, and its weight was greatly diminished when, from a careful study of the record, we ascertained that the matter of the work to be done and materials to be furnished, for which the note and guaranty were given, arose on or about the earlier date, and was a subject of negotiations between plaintiffs and the Academy from that time until the documents were actually delivered; that the dates in them were inserted by the officials of the Academy, in the way it was customarily done in DeVoe's dealings with it, and in the absence of and before their delivery to plaintiffs.

In order to determine accurately whether or not the trial judge erred in submitting the question of estoppel to the jury, a fuller statement of the relevant facts is required. On receipt of the guaranty and accompanying

documents, plaintiffs did not accept them absolutely, nor then agree to give the Academy the credit desired, but stated that they would consider the matter further and later advise the Academy as to whether or not they would, in reliance thereon, supply the additional work and materials. On consultation with their counsel, they wrote the Academy that they desired a certified copy of the paper showing that DeVoe had authority, as attorney in fact, to execute the guaranty. In response to this request, plaintiffs received a certified copy of the appointment of DeVoe on October 8, 1925, on the back of which was endorsed a statement by the assistant secretary of the company, dated April 23, 1927, and acknowledged before a notary public, certifying "that the original power of attorney, of which the foregoing is a full, true and correct copy, remains in full force and effect."

After getting this paper, plaintiffs, on July 6, 1927, wrote defendant a letter, enclosing therein a photostatic copy of the guaranty signed by DeVoe, and stating in the letter that "as the contract is very informal and the amount involved substantial, we desire that you shall have notice of the delivery of the contract to us and our acceptance of it and reliance upon it." This does not clearly express the fact that nothing had yet been done in reliance upon the guaranty, but when there is taken into account the further fact that the sending of the letter would have been a useless thing if the contract with the Academy had been completed, and also the character of work to be done by plaintiffs and the due date of the note,—December 8, 1927,—it is a reasonable inference that defendant should have known that but little, if anything, had been done, and that a notice from them to plaintiffs would possibly save either them, or plaintiffs, or both, a considerable loss. What defendant did after receiving this letter does not appear in the record now before us, but, on the first trial, it was proved by defendant's witnesses (299 Pa. 318) that defendant "did not reply to it, nor did [defendant] repudiate the guar-

anty, so far as the record discloses, until after this suit was begun. The excuse of its secretary was that he tried to find plaintiff Keller personally, and, being unable to do so, dismissed the matter as a closed transaction." This is, of course, an unsatisfactory excuse, since a letter left at plaintiffs' place of business would have answered every purpose. It is a fair inference from the evidence that defendant's officers knew, at this time, of the previous wrongdoing of DeVoe, and, believing they had no defense, neglected ordinary business precautions, with the result that defendant will suffer a loss of the amount of this $10,000 bond, and plaintiffs have lost more than $20,000 beyond that.

Not having heard anything from defendant in answer to the letter last referred to, plaintiffs proceeded with the work for the Academy at the aggregate expense last above stated, and finished it about the time the note fell due. When the note was presented for payment to the Academy, payment was refused, the note was duly protested and notice thereof given to defendant, which declined to pay the $10,000 specified in the guaranty, and this suit was then brought.

It also appeared in evidence that the Academy had given to defendant a mortgage in the sum of $150,000 to secure the latter in any guarantees it might issue for the Academy. Ten of them, aggregating $100,000, had been applied for in writing, had been given to a third party and were ultimately paid. There was no written application for the guaranty in suit, but it is admitted that DeVoe was not told he must receive written application before issuing a guaranty, and that defendant's records disclose a "jacket" for an additional guaranty for $50,000 to the Academy, which had not been applied for in writing. It also appeared that, on July 22, 1927, more than a month after plaintiffs received the guaranty in suit, and more than two months after the power of attorney to DeVoe is alleged to have been cancelled, the Academy paid defendant $1,500 as a premium on the

bonds given by defendant guaranteeing the Academy's debts; but this sum, defendant says, was the premium on the other $100,000 of guarantees.

Upon the question of estoppel, the trial judge left the matter entirely to the jury; he expressed no opinion in regard to it. Defendant's first contention on the point is that it should not have been submitted at all, since estoppel was not pleaded. This overlooks the fact that DeVoe admittedly had been defendant's agent, and, if it is estopped to deny that he had ceased to be so when the guaranty was given, then, as to plaintiffs, the agency still existed, and their pleading that defendant's agent, with due authority, executed the guaranty was strictly true. Moreover the point is ruled by Hoffman v. Mutual Fire Ins. Co. of Reading, 274 Pa. 292. In that case (page 296) the court below entered judgment for defendant "because plaintiffs had not specifically pleaded estoppel, the evidence [thus resulting in] a variance between the allegata and probata." We said in reversing the judgment (page 297): It is "not necessary......to anticipate the defense by averring, by way of confession and avoidance, the facts of estoppel in the statement of claim," nor, under the procedure acts, could it properly be averred in a reply.

Turning then to the merits of the controversy on this point, we find that the estoppel for which plaintiffs contend is alleged to arise out of two distinct lines of fact. The first of them is as follows: When DeVoe was appointed attorney in fact he was given a number of certificates of his appointment and of his continuing in that capacity, similar to those given plaintiffs as above specified. These certificates were given, as defendant's secretary and treasurer testified, to enable DeVoe to show his "authority to execute bonds to the persons who may inquire for such authority." He was also given the seal of the defendant corporation which he could use on any paper issued by him. Whenever he asked for additional certificates they were given to him. Despite the

broad authority which they were intended to evidence to innocent third parties, defendant kept no record of them, nor of what became of them. It says that when it cancelled DeVoe's appointment on May 21, 1927, if defendant did then cancel it, he was asked what certificates were then outstanding and said there were none; but defendant made no attempt to verify the accuracy of the answer, or to give notice, by advertisement or otherwise, that his agency had ended. Because of this indifference to the rights of plaintiffs and others acting on the faith of those certificates, as defendant intended they should act, it is and ought to be estopped to deny its liability to innocent parties acting in reliance thereon.

Furthermore, as the written power of attorney created a continuing agency, indefinite as to time, we held in our former opinion that, in the absence of effective evidence to the contrary, "there is a presumption that it is to continue in force for a reasonable time after it was executed, and after a date on which it was shown to have been recognized as still in force." What constituted a reasonable time, under the facts of this case, was essentially a jury question. The certificate of continuance issued by defendant and received by plaintiffs shows that the agency still existed on April 23, 1927, and defendant admits it continued until May 21, 1927. Moreover, that certificate stated that the guaranty was issued "in consideration of an agreed premium, receipt of which is hereby acknoweldged." Plaintiffs had a right to rely on this recital, in the absence of notice or knowledge to the contrary, of which there was none. There is no evidence as to whether or not the premium on this particular guaranty was in fact paid to defendant, except as stated in that recital, which must control in the absence of evidence to the contrary. When defendant's secretary and treasurer was asked the question, he evasively replied that defendant was paid "no premium after the guarantee was received," which is not correct since admittedly they received the $1,500 after that date.

The trial judge charged the jury on this point: "You have to say whether you think the defendant company should or should not be allowed to escape liability on the ground that DeVoe was not their agent authorized to give this guaranty at the time when it was given, in view of the fact that they had put into his hands certificates by which he was enabled to say to people that he was their agent although they had cancelled the agency in their own office; and having heard just what notice, if any, they gave about it, whether you think that notice was enough to warn off Mr. Keller under the circumstances, or whether you think Mr. Keller was deceived in relying on the certificate when he got it." Aside from the general statement that, for want of proper pleadings, no question of estoppel arose, we have been pointed to no error in this portion of the charge. It would be a serious matter if a corporation was allowed to shift from itself to an innocent party who dealt with it, the loss occasioned by the acts of its agent, to whom it gave a general power over a branch of its business, and in whose hands it placed duly executed certificates stating that he had such continuing power, and that the consideration for the particular guaranty had in fact been paid. Under such circumstances, as we pointed out on the prior appeal, "Where one of two innocent parties must suffer a loss because of the acts of a third, he who clothed the wrongdoer with the power to injure must bear the loss." It is urged by defendant that this branch of its business could not be carried on if such a rule were applied to it. We do not agree; but, if we did, we would still be compelled to decide the point the same way. Competition in business furnishes no reason why one of the competitors should be permitted to wrong his customers. In these days of telegraphs and telephones, if the agent is not to be wholly trusted, the principal must run the risk of either the loss of the business, or liability to the customer resulting from such haste. In any event, for the reason stated, the principal who gives

to the agent absolute power to wrong the community in general, must bear the loss if innocent parties are injured by his exercise of that power. As said in Marshall v. Reading Fire Ins. Co., 29 N. Y. Supp. 334, 335: "The agent had acted as the general agent of the defendant upon the subject of issuing of policies, and his acts had been adopted by the company; and, so long as the company left this class of policies with him, and thus enabled him to continue to deal with the public upon the strength of his previous agency and the use of its policies, no secret revocation of his power could absolve the defendant from liability to third persons dealing upon the strength of such apparent authority without any knowledge of the revocation of such authority."

The other course of conduct by defendant, out of which the jury may have found an estoppel, relates to its conduct when it was advised by plaintiffs that they had received the guaranty in suit. We have already referred to the relevant facts bearing on this point. The charge to the jury regarding it is: "Now, there is another matter for you to consider in regard to this question of estoppel. I have already called your attention to the fact that the plaintiff showed you that, on July 6th, he sent a photostatic copy of this guaranty to the company itself, and said this is what I got and I am relying on it. Now, when the company got that, if they read it, as we presume they did (since they acknowledge receipt of it through the post office), it would have been an indication to them, that, on April 23d, Mr. DeVoe had given this paper of guaranty, at least this paper had gotten into Mr. Keller's hands, and purported to be signed by Mr. DeVoe on that date. You will have to consider to what extent, if at all, there is any estoppel arising on the part of the defendant by reason of the fact that they did not answer the letter of Mr. Keller. It is true in one sense they did not have to answer it; he simply told them I am giving you notice I got this paper and I am relying on it, and a man cannot be forced into

a contractual obligation simply by remaining silent, if there is no merit in the notice that he gets; but, on the other hand, under all the facts, since they had put it in the power of their agent, Mr. DeVoe, to furnish certificates of authority, and they knew that there was the possibility of [his] improperly using these certificates, and then they receive notice of this particular guaranty which was over Mr. DeVoe's signature [especially as they now say they had been personally told by DeVoe that there were none outstanding], it is for you to say whether their failure to say anything such as, you better go a little slowly on that, or, we repudiate that, or, we don't admit that to be a correct obligation, look out for yourself; I say, whether their failure to do that now precludes them from raising the question, is for you to say under the general principle of estoppel to which I have referred. That is to be taken in connection with the other matters relating to estoppel to which I have called your attention. While it is true that the letter mentions the note and the guaranty, it is also true that the consideration for this note was not given at the time it was executed. The consideration was a continuing delivery of materials and work running down until December, and therefore, when this letter of July 6, 1927, was sent to the New Jersey Company, and no answer received, Mr. Keller went on and delivered thousands of dollars worth of goods to this American Academy, so that what [plaintiffs] did in the way of work and labor and for which they are now claiming payment, in a sense was all done, practically all done or rendered after they sent this letter to the New Jersey Company and it failed to reply; so that while in one sense it is true they simply called its attention to a consummated act, namely, the giving of a note, it is also true that on the faith of that note and of the guaranty they continued over a period of many months to supply goods and labor, and this a repudiation of the guaranty in answer to the letter of

July 6th, would presumably have stopped them from doing."

We see no error in what is there said, nor do we see how the trial judge could have done otherwise than submit the question of estoppel to the jury. As said in Thomas v. Employers Liability Assurance Corp., 288 Pa. 325, 328: "A principal is liable to third parties affected by the acts or words of the agent, though possessing but limited powers, made within the apparent scope of his authority, when the representations or promises are brought to the attention of the company, and not repudiated." A fortiori this must be so in the case of a general agent, acting within the scope of the written power conferred on him, when the paper signed by him appears on its face to have been executed and delivered at a time when, admittedly, he was such general agent. Under such circumstances, the principal who asserts that the fact is otherwise than as it appears to be, has the burden of proving it, and this the jury has found defendant did not do.

There is no room for doubt that both plaintiffs and defendant were seriously wronged by DeVoe and the Academy, and that the case bristles with suspicious circumstances, as this kind of a case practically always does, and hence is peculiarly a matter for a jury to decide. It is also free from doubt that both plaintiffs and defendant acted honestly in all that they did, before and after suit brought, and that defendant loses solely because it was their agent, and not plaintiffs', who was the wrongdoer. Upon the whole case, therefore, we agree with the court below that the question of defendant's liability was one for the jury to decide, and, since they determined it in a way satisfactory to that court, it is not for us, in the absence of error, to reverse its judgment.

We have not specifically referred to each of the twenty-three assignments of error, nor would anything be gained by so doing. So far as they relate to the case

generally, they have been passed upon in what we have already said. All the others refer to matters not referred to in the statement of the questions involved, and hence need not be considered (Van Billiard v. Croft & Allen Co., 302 Pa. 349), or to alleged errors in the charge to the jury, of which we have already said, and now repeat, that it was "a careful and impartial charge, of which no just complaint can be made" by defendant.

The judgment of the court below is affirmed.