Fletcher et al. *v.* Central Wrecking Corporation, Appellant.

Argued October 13, 1936.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Richard A. Smith,* with him *Louis Wagner* and *Thomas J. Clary,* for appellant.

*Arthur S. Salus,* for appellee.

OPINION BY STADTFELD, J., December 21, 1936:

This is an action in trespass for damages on account of injuries suffered by minor plaintiff from a gun-shot wound inflicted by a private watchman in the employ of Central Wrecking Corporation, defendant.

The trial resulted in a verdict for plaintiff in the sum of $750 and for the mother in the sum of $105. A remittitur was filed by the mother for all of the verdict in her favor in excess of $18.

No evidence was offered on behalf of defendant company. Motion for judgment non obstante veredicto was overruled in an opinion by LAMBERTON, J. From the judgments entered, these appeals were taken.

The facts are correctly stated in the opinion, from which we quote as follows: "In view of the verdict of the jury, the following facts may be taken as established: On October 14, 1934, at about 4:30 P. M., the minor plaintiff with a group of small friends was walking across South Street bridge, in the City of Philadelphia. Underneath the bridge is the storage yard of defendant, which was guarded by Dallas Lenich, a

watchman employed by defendant. The children heard dogs barking below, and looking through the rail, they saw boys in the rear of the yard throwing stones at dogs in the yard. They also saw Lenich with a revolver in his hand, and heard him shout 'Get out of here.' The watchman pointed the revolver upwards and fired, striking the minor plaintiff in the arm and causing the injuries complained of. Some of the children testified that when the watchman fired, he was looking up at them on the bridge, while one of the children, LeRoy Moody, testified that the watchman was looking the other way—towards the boys. There is no testimony that the children on the bridge did anything to annoy the watchman."

Under the circumstances, the evidence and the inferences properly deducible therefrom must be read in the light most favorable to plaintiffs.

While the minor plaintiff testified that the watchman pointed the gun at her and her cousin, LeRoy Moody, who was in their company at the time, testified: "We heard some dogs barking so we looked through the rail and saw these dogs barking and so we saw some boys on the left side. Q. Where? A. Of the lumber yard. Q. Were they on the bridge, too? A. No, sir; some boys were on the bridge and some boys were over on the other side of the lumber yard. So the dogs started barking and after that the watchman came out and he was standing in the yard and *he was turning around, he wasn't facing us, he was facing the other way.* Q. What way? A. Toward the boys that were playing in the back of the lumber yard, so he yelled 'Get out of there.' " ( Italics supplied)

The court instructed the jury as follows: "The plaintiff must prove to your satisfaction that this child was injured as a result of a careless act on the part of an employee of the defendant company, while engaged in the performance of his duties as a watchman, in and

about the premises owned or leased by the defendant. ...... Therefore you will have to determine this question in the case. When Lenich fired the gun was it his own individual act, or was he acting in the scope of his employment? In other words, was it the act of Lenich himself or was it the act of an employee? You may need help in reaching the answer to that question, by asking yourselves whether or not under all the circumstances it could be fairly assumed that one acting as a watchman would be expected to fire a shot at children that were of tender years, and that were utterly harmless and not endangering the property or persons of the defendant. I say to you that it is not within the scope of a watchman's employment to fire at children such as you have seen and heard in this case. The duty of a watchman is to protect property and protect life on that property. It is not his duty to fire shots at children that may even be annoying him. If he fired a shot within the scope of his employment, in the sense that he was serving his employer, and that was within the duty that was assigned to him, then the employer is liable, otherwise he is not. If you find that he lost his head or that he acted out of his own personal spite or ill will or that it was an act of recklessness on his part, then he would have stepped out of the scope of his employment and the act would be his personal act, and in that case your verdict should be for the defendant ...... You have to determine first whether this watchman was acting upon his own initiative, in other words whether it was his personal and individual act, removed from his character as a watchman, or whether what he did was within the scope of his employment as a watchman. If you find that he was acting independently, upon his own initiative, then your verdict should be for the defendant."

The jury saw fit to believe the testimony of LeRoy Moody that the watchman was facing the boys who were

being driven away by the watchman. If so, it is a natural inference, that he fired the gun to frighten them away. This, if believed, was certainly in the scope of his employment, and if by reason of his carelessness in that connection, injury was inflicted on the minor plaintiff, defendant would be responsible. The watchman's order to "get out of here" was certainly directed to the trespassers. There is no evidence that the use of the gun at the same time, was for any other purpose. The watchman's language and his shooting could hardly have been directed at the innocent children who were at least one hundred feet above him on the bridge. It is obvious that the watchman was interested in ridding the premises of the trespassers. Therefore, the conclusion that the minor plaintiff was accidentally injured by the watchman while he was acting within the scope of his employment is a logical inference to be deduced from the evidence.

Quoting from the opinion of the lower court: "Not only may the jury have found that the watchman fired in the air to scare the boys in the yard, but the common sense of the situation indicates that this is what he probably did. He had no apparent reason to fire at the little children looking through the railing of a bridge far above him. There is no evidence that they were doing anything to annoy him. On the other hand, the boys in the lumber yard were threatening his employer's property, and a shot in the air to scare them would be a very understandable action. Before firing, the watchman shouted: 'Get out of here.' These words could hardly have been directed at the children on the bridge, but were very applicable to the boys in the yard."

As stated in *Guille v. Campbell*, 200 Pa. 119, 49 A. 938: "Where an injury is caused by a servant in the use of means fairly adapted to accomplish the purpose of his employment, the master is responsible. This is

true, even though the act of the servant is wrongful or unauthorized. But where the act of the servant does not fairly tend to effectuate the discharge of the duty, for which he is employed, the master is not liable."

Quoting from the opinion by Mr. Justice DREW in *Pilipovich v. Pittsburgh Coal Co.*, 314 Pa. 585, 172 A. 136, on p. 588: "That a master may be held liable for the act of a special policeman, employed by him as a watchman or guard and authorized to use force against others in the performance of his duties, in wrongfully shooting another is not something new to the law. It has been so held in many jurisdictions" (citing cases).

In the instant case, the license to act as private watchman was issued to Dallas Lenich the watchman, by the Director of the Department of Public Safety of Philadelphia on the written request of Central Wrecking Corporation, the defendant.

Appellant's argument is based on the assumption that the watchman deliberately and maliciously fired at and shot the minor plaintiff. If this assumption is unwarranted, then the cases cited by appellant have no application.

The case was fairly submitted and there is sufficient evidence to sustain the verdict.

The assignments of error are overruled and judgment affirmed.