Robert Howarth's Sons, Inc., Appellant, *v.* Boortsales.

Argued November 21, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Aaron Tollin,* for appellant.

*J. Paul MacElree,* for appellee.

OPINION BY STADTFELD, J., January 31, 1939:

This is an action of replevin brought by Robert Howarth's Sons, Inc., assignee of James P. Hickman, against the defendant, Gus Boortsales.

Plaintiff's statement of claim alleges that on or about September 12, 1935, James P. Hickman, plaintiff, and Gus Boortsales, defendant, entered into a written contract providing for the installation of an automatic coal burner on the premises of defendant, and providing further for the payment of $585 within thirty days from the time of installation; that, on the same day, James P. Hickman assigned the contract to Robert Howarth's Sons, Inc.; that the automatic coal burner was delivered to defendant in accordance with the contract; that, although defendant paid a total amount of $234, he failed to pay the balance when due or at any other time; and, that right of possession to the chattel is in plaintiff by reason of defendant's default in payment of the purchase price. An affidavit of value was filed, setting forth the value of the chattel at $351; a bond in the sum of $702 was also filed.

The affidavit of defense filed by defendant, denies that a contract was entered into between himself and James P. Hickman, but avers that the contract was made between himself, as buyer, and both James P. Hickman and Ralph R. Matlack, as sellers. Defendant also denies any notice of the assignment of the contract, and avers that payment in full had been made to Ralph R. Matlack with the knowledge, consent, and approval of James P. Hickman. The affidavit of defense denies de-

fendant's default, and sets up his right of possession and title by payment. Together with the affidavit of defense, defendant filed a counter-bond in the sum of $702.

At the trial of the case before HARVEY, J., and a jury, a verdict was rendered in favor of plaintiff in the sum of $356.13. On motion of defendant, the court entered judgment n. o. v. in his favor. This appeal followed.

The disputed questions of fact being resolved in favor of the plaintiff, the testimony in the instant case supports the following facts: James P. Hickman was engaged in the business of selling heating equipment in West Chester, Pa., as a dealer for Robert Howarth's Sons, Inc., distributors of Electric Furnace Man coal burners. Ralph R. Matlack was a plumber in West Chester and was employed by Hickman to install coal burners. At times, Matlack acted as salesman for Hickman, and received commissions on sales which he made.

On September 12, 1935, following some earlier oral negotiations between the parties, Hickman drew up a written form of bailment lease contract covering the transfer of a coal burner, and signed his name at the end thereof, with the word "Seller" printed after his name. He gave this written contract to Matlack for delivery to Boortsales, defendant, and for the purpose of having the latter affix his signature as purchaser. Having obtained the instrument, Matlack signed his own name directly beneath that of Hickman, without the latter's consent or authorization, so that when delivered to Boortsales, the instrument bore the names of both Hickman and Matlack at the end. The small letter, "s," was written immediately after the word "Seller," following Hickman's name on the upper of the two lines carrying both signatures. Boortsales then signed the instrument, thus executed. Matlack thereupon forwarded the instrument to Robert Howarth's Sons, Inc., which company had been given a written assignment thereof, executed on September 12, 1935, by James P. Hickman alone.

The coal burner in question was sold to Howarth's Sons, Inc., by Electric Furnace-Man, Inc., and was shipped on or about September 14, 1935, to Hickman. It was installed by Matlack on the defendant's premises at or about the time he was performing other work for defendant. Subsequently, the purchaser, Boortsales, paid Matlack the full amount covering the equipment delivered under the contract and the cost of installation. Matlack failed to turn over the proceeds to either Hickman or to Howarth's Sons, Inc. Both of the latter parties demanded payment of the balance due under the contract, or return of the coal burner. Boortsales refused.

The question to be determined in the instant case is as follows: Who, as between the seller of personal property and the buyer thereof, is to shoulder a loss occasioned by the fraudulent dealing of a third person active in a transaction between them.

The written contract upon which the present action is based, was drawn up in the form of an order by the purchaser upon the seller, and provided, inter alia, as follows: "This instrument shall be binding on the parties whose names are subscribed hereto, when approved by your Engineering Department and accepted by you and when so approved and accepted, shall inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto"; and, further provided: "The undersigned Purchaser agrees that: II. This order is subject to acceptance by the Seller."

It appears, however, that when this instrument was delivered to the purchaser for his signature, it had already been signed and "accepted" by James P. Hickman and Ralph R. Matlack, as sellers. In this connection, it should be noted that there is no conflict with respect to the fact that at the time Boortsales executed the contract, it bore the signatures of both Matlack and Hickman. While the first portion of Matlack's testimony was denied by Hickman to the effect that Matlack

signed it in his presence, the latter part relating to the delivery of the instrument has been uncontradicted. The instrument, as presented to Boortsales, was the one that he signed.

Upon the execution of the instrument by Gus Boortsales, purchaser, it was forwarded, by Matlack under instruction from Hickman, directly to the assignee, Howarth's Son's, Inc. The result was that Hickman did not see the contract after its execution by Boortsales. In fact, his entire course of conduct with reference to the delivery, execution and subsequent transfer to the assignee of the instrument was such as to prevent himself from becoming apprised of its final form and content. In the first place, he signed before the purchaser and thus deemed it unnecessary to scrutinize the contract after the purchaser had executed it, but before the transfer to the assignee, as he would have done in the normal course of events and in accordance with the plain expectations of the parties, had he reserved his "acceptance" until after the purchaser's signature had been affixed. Secondly, having affixed his own signature, he delivered the instrument to Matlack for the purpose of obtaining the purchaser's signature, and thus armed Matlack with the means and opportunity of perpetrating a fraud by adding his own name to the blank space directly beneath that of the real seller. Further, his instructions to Matlack to forward the instrument, when executed by the purchaser, directly to the assignee, without returning it to the assignor-seller, resulted in the latter's failure to avail himself of the opportunity of examining the instrument which purported to be "binding on the parties whose names are subscribed hereto, when ...... accepted."

In sharp contrast to Hickman's careless handling of the transaction, stands Boortsales' innocent conduct. The latter merely affixed his signature to the instrument, and, relying upon its validity, awaited the fulfillment of the order by delivery of the equipment. The

delivery and installation were subsequently made precisely in accordance with his expectations and understanding. The benefit of such performance by Hickman's delivery of the equipment having accrued to Boortsales, he was further led into believing that Hickman had approved the contract and had adopted the same construction as himself with reference to its validity. Payment was accordingly made to Matlack, who, from the plain reading of the instrument and from Boortsales' understanding thereof, appeared as one of two joint obligees to whom the debt was due.

Whatever fraudulent dealing was involved in the transaction can be attributed only to the agent, Matlack, who, having been armed with the means of perpetrating a fraud, did so by representing himself as a co-seller with his principal, Hickman. The latter, through carelessness, failed to apprise himself of the fraud, but, rather facilitated its perpetration; he made delivery in pursuance of, and under the terms of the contract as executed, and in accordance with the purchaser's understanding thereof. The purchaser, Boortsales, then paid Matlack who appeared to be a joint owner, with Hickman, of the coal burner.

The facts and circumstances of the instant case present a clear situation for the application of the doctrine of estoppel. One way of stating the rule, particularly applicable here, has been expressed as follows, "It may also happen that, while the agent's fraud alone would not under the circumstances involve the principal, the latter himself may, by some culpable act or omission of his own, so supplement or assist the agent's act as to charge the principal with the consequences": Mechem on Agency, (2nd Ed.) Vol. 2 p. 1552, sec. 1986.

Matlack had misrepresented himself as a co-seller. With the consequences of this misrepresentation, Hickman might not be charged, were it not for the fact that he, himself, directly assisted in the misrepresentation

which resulted in Boortsales' reliance and consequent deception. Having negligently failed to examine the executed instrument before assigning it, but having made delivery of the chattel in pursuance with the contract's provisions, Hickman clearly represented the validity of the instrument's execution with Matlack as a co-seller. Matlack's own misrepresentation, thus assisted by Hickman's conduct, is chargeable to the latter, who cannot now be heard to deny the validity of the instrument's execution.

Payment of the purchase price was made to Matlack by Boortsales, discharging the debt, and hence title to and the right of possession in the coal burner vested in him. Accordingly, it is our opinion that as between Hickman and Boortsales, the former must bear the loss.

It follows, therefore, that the appellant assignee of Hickman in the present suit, is not entitled to recover. The rights of the assignee rising no higher than those of its assignor, the same defense is here available against both. However, insofar as the assignee, Howarth's Sons, Inc., is concerned, the company itself was clearly not without fault in the course of dealing resulting in Boortsales' payment of the purchase price to Matlack. For the evidence plainly indicates that Howarth's Sons, Inc., had in its possession, two separate instruments which if considered together, would have placed their possessor on notice of inconsistent obligations due under each. The instrument of assignment, by which the rights under the contract were transferred to Howarth's Sons, Inc., was executed by James P. Hickman, alone; the contract itself, when received by Howarth's Sons, Inc., carried the signatures of both Hickman and Ralph R. Matlack as co-sellers and joint obligees. Having notice of this situation, Howarth's Sons, Inc., did nothing, but assumed the risk of Boortsales making payment to Matlack under the terms of the contract. After such payment, it would clearly be too late for Howarth's Sons, Inc., to object.

After a careful examination of the record and consideration of the questions of law involved, we are in accord with the learned court below in reaching the conclusion, though we differ in the reasoning supporting it, that judgment be entered for the defendant.

Assignments of error are dismissed, and judgment affirmed.