Anna **BOWMAN** and Doris Bowman, Appellants,

v.

The **HOME LIFE INSURANCE COMPANY OF AMERICA**, a Delaware Corporation.

No. 12120.

United States Court of Appeals Third Circuit.

Argued March 5, 1957.

Decided April 16, 1957.

Rehearing Denied May 10, 1957.

Joseph Matusow, Philadelphia, Pa., for appellants.

Richard E. McDevitt, Philadelphia, Pa. (Winifred M. Nash, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., on the brief), for appellee.

Before MARIS and GOODRICH, Circuit Judges, and McILVAINE, District Judge.

GOODRICH, Circuit Judge.

This is an action brought by Mrs. Bowman and her daughter against an employer for improper conduct on the part of its agent. The jury found for the defendant, judgment was entered on the verdict and the plaintiffs appeal.

The story of the case, as presented in the evidence on the plaintiffs' behalf, runs something like this. Mrs. Bowman, recently widowed, was called upon by a salesman of the defendant insurance company and induced to sign an application for insurance for herself and a younger son. Her eighteen year old daughter signed a similar application. These applications were duly forwarded to the company and were put into the hands of one Bruno who served as "field underwriter" for his employer. As we understand it from the testimony, the field underwriter is supposed to call upon applicants for insurance and ascertain

whether the insurance applied for is an appropriate risk for the company to take. Among other things, he is supposed to complete and verify the medical history of the applicant. In the application for insurance, signed by each plaintiff, there was a statement that the applicant was not "deaf, dumb, blind, ruptured" and so forth. The field underwriter was given the original application cards, which, in addition to the above question, contained some medical history and other information as to an applicant's height, weight, occupation and so on.

Bruno was not a physician and he was not authorized to make medical examinations of applicants. Nevertheless, he provided himself with a black bag which looked like a physician's kit and one day called upon Mrs. Bowman. He had with him the cards signed by Mrs. Bowman and her daughter. He identified himself as a doctor sent by the defendant insurance company. He not only asked questions and weighed the applicants but he made the type of intimate examination which would have been proper enough if he had been authorized to make an examination for the presence of a hernia. But it was obviously improper when not made in the course of a medical examination. He conducted this examination upon both women, more thorough in the mother's case than that of the daughter, and then left. Subsequently the company's real physician called upon Mrs. Bowman. When they learned how they had been imposed upon both mother and daughter claimed resulting physical illness.

Our question in this case is whether there is reversible error in the manner in which the case was submitted to the jury. The problem is wholly one of Pennsylvania law; our jurisdiction is based upon diversity only.

■ There would be no question about Bruno's individual liability. Such a contact as he inflicted upon plaintiffs is one called in the Restatement an "offensive bodily contact." [1] The fact that permission for the touching was obtained by fraud vitiates the consent given by the ad hoc patient.[2] The question is, however, whether Bruno's conduct in this instance can be attributed to his employer.

The plaintiff has advanced the theory that the company had a duty of protection which was not delegable and for the violation of which it is responsible even though its employee departed from the line of duty. Cf. Restatement, Agency § 214 (1933). The often cited case of Craker v. Chicago & N. W. Ry., 1875, 36 Wis. 657, 17 Am.Rep. 504, is relied upon. We think the argument not in point. There was no such entrusting of the plaintiff's person or property to the company as is found in the relation of railroad passenger and carrier and the suggestion that insurance is a business vested with the public interest does not strengthen the case.

Nor do we think that we get help here from the myriad of cases in which a servant authorized to keep order or use force under some circumstances uses too much force. E. g., Orr v. William J. Burns International Detective Agency, 1940, 337 Pa. 587, 12 A.2d 25; Fletcher v. Central Wrecking Corp., 1936, 124 Pa.Super. 271, 188 A. 612; Restatement, Agency § 245 (1933). Bruno was not authorized to use any force at all.

Argument is made that the employer was negligent either in hiring Bruno, failing to restrain him or failing to warn

---

1. Restatement, Torts §§ 18, 19 (1934). Cf. Martin v. Jansen, 1920, 113 Wash. 290, 193 P. 674, affirmed on rehearing, 1921, 113 Wash. 295, 198 P. 393; Hatchett v. Blacketer, 1915, 162 Ky. 266, 172 S.W. 533; Annotation, 6 A.L.R. 985 (1920).

   Pennsylvania has explicitly adopted the Restatement definition of a battery or tortious contact. Commonwealth v. Bird, 1943, 152 Pa.Super. 648, 33 A.2d 531.

2. Commonwealth v. Gregory, 1938, 132 Pa. Super. 507, 1 A.2d 501. Restatement, Torts § 55 and comment b thereto; § 52, comment b (1934).

plaintiffs in advance that he was not a physician. The trial judge thought nothing of this argument and neither do we. The testimony makes it pretty clear that as soon as his employer found out what Bruno did in this case and others Bruno was immediately discharged.[3]

■ If the plaintiff is to recover here, recovery will be based upon the cases which hold a principal responsible for the deception practiced by his agent, notwithstanding the fact that the agent's fraud is not to help his principal but rather, in some cases, to injure him or at any rate to serve himself rather than his employer. The two sections of the Restatement, Agency (1933) which cover this situation are sections 261 and 262. They read as follows:

"§ 261. Agent's Position Enables Him to Deceive.

"A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.

"§ 262. Agent Acts for His Own Purposes.

"A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him, under the rule stated in § 261, is not relieved from liability by the fact that the apparent agent acts entirely for his own purposes, unless the other has notice of this."

We think that these sections describe what happened in this case. Following an application in which the medical questions were asked, Bruno was sent out to check on the applicants. He had the cards signed by plaintiffs which the jury could have found constituted a voucher for his authority. True the company did not give him the black bag. But it did give him the cards which en-

titled him to ask a good many questions. Although he went further than his instructions indicated and committed the tort on the plaintiffs, this was a kind of deceit which was well within the insignia of office with which he had been clothed. The fact that his fraud took the form of a tortious touching instead of a tortious securing of money from the victim is, we think, not important.

It is not surprising that the unusual facts of the instant case seem not to have come before the Pennsylvania courts. However, Mr. Justice Maxey quoted section 261 of the Agency Restatement, set out above, with apparent approval in Bachman v. Monte, 1937, 326 Pa. 289, 296, 192 A. 485, 488. A case which seems to us to involve the same problem as ours is Robert Howarth's Sons, Inc., v. Boortsales, 1939, 134 Pa.Super. 320, 3 A.2d 992. This was a case in which an agent slipped in his own name as a co-party to a contract signed in blank and entrusted to him by the principal. The court protected the third party who paid the agent after the principal performed. Judge Stadtfeld speaks of the agent being "armed with the means of perpetrating a fraud." 134 Pa.Super. at page 325, 3 A.2d at page 994. In Keller v. New Jersey Fidelity & Plate Glass Ins. Co., 1932, 306 Pa. 124, 135–136, 159 A. 40, 44, the court lays down the rule that "the principal who gives to the agent absolute power to wrong the community in general, must bear the loss if innocent parties are injured by his exercise of that power."[4]

In addition, there are numerous cases where the Pennsylvania court speaks of the rule that " 'where one of two innocent persons must suffer loss for the fraud of a third, the loss should fall on the one whose act facilitated it.' " This quotation is taken from Ervin v. City of Pittsburgh, 1940, 339 Pa. 241, 256, 14 A.2d 297, 303. A good collection of

---

3. There was evidence that at about the time of the acts involved in this case, Bruno made what he purported to be medical examinations on five other female applicants for insurance.

4. What the learned justice meant by "absolute" power is not quite clear.

Pennsylvania decisions using this and similar language is found in the opinon of Judge Arnold in Weiner v. Pennsylvania Co. for Ins. on Lives and Granting Annuities, 1947, 160 Pa.Super. 320, 51 A.2d 385, (note 17).

There is some very broad language which seems to talk the other way in Littler v. Dunbar, 1950, 166 Pa.Super. 271, 70 A.2d 365. This case, however, turned upon the distinction between recovery in trespass and assumpsit as is shown by the action of the Supreme Court of Pennsylvania reported in Littler v. Dunbar, 1950, 365 Pa. 277, 74 A.2d 650. We think that the Howarth case discussed above comes as close as one could expect to find a precedent for guidance in this unusual set of facts.

■ The learned trial judge told the jury that Bruno's conduct had to be at least in part for the benefit of his employer at the time of the act complained of. This was incorrect. See, for instance, the Howarth case, where the agent was acting against, not for, his principal's interest. There is no doubt that the evidence shows that his employer's interest was not in Bruno's mind at that time. But we think, in the language of the Pennsylvania case, that it could be found that Bruno was armed by his principal with the means to do what he did and that the excess of his activities beyond his authority is at the principal's risk.

The preservation of the plaintiff's rights through objections is not too clear. The trial judge met with counsel in chambers to discuss points for charge. The judge said that he had considered the cases submitted and on two occasions stated that the only basis for liability would be if Bruno was at least partially in the line of his duty when he examined plaintiffs. Points for charge were framed to accord with this theory. As we have already said, this was incorrect. But both counsel and court knew what the problem was, although it was answered incorrectly. We think the case should be tried under the correct rules of law.

Cf. United States v. Cumberland, 3 Cir., 1952, 200 F.2d 609; United States v. Pincourt, 3 Cir., 1947, 159 F.2d 917.

The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.