Anna BOWMAN

v.

The HOME LIFE INSURANCE COMPANY OF AMERICA, a Delaware Corporation.

Doris BOWMAN

v.

The HOME LIFE INSURANCE COMPANY OF AMERICA, a Delaware Corporation.

Civ. A. No. 16777.

United States District Court
E. D. Pennsylvania.
March 6, 1958.

702

Joseph Matusow, Irving Marks, Philadelphia, Pa., for plaintiffs.

Richard E. McDevitt, Philadelphia, Pa., for defendant.

LORD, District Judge.

This opinion arises from plaintiffs' motion for a new trial. The fact situation is somewhat unusual. Plaintiffs, Anna and Doris Bowman, mother and daughter, had arranged to increase their insurance with defendant company. Accordingly, defendant sent Thomas Bruno, a field underwriter, to plaintiffs' home to verify the medical history given in their applications and to evaluate the insurance risk. Defendant furnished Bruno with a bathroom scale and the application cards previously signed by the plaintiffs. When Bruno was admitted by Mrs. Bowman, he was carrying the scale in a small physician's bag. He introduced himself as Dr. Bruno and informed Mrs. Bowman he was defendant's doctor and had come to examine both her and her daughter. Bruno thereupon made a brief but intimate examination of both plaintiffs, ostensibly for hernia, one of the items dealt with in the application cards. At no time did Bruno depart from his professional masquerade and make any indecent remarks or suggestions to either plaintiff, nor was the examination attended by any immediate ill effects upon the Bowmans. However, when they learned a few days later of the fraud practiced on them, they experienced considerable physical and emotional disturbances.

Suit was brought on two theories: one that defendant's negligence in hiring Bruno and in failing to warn plaintiffs that he was not a physician caused their injury; the other that defendant was liable as Bruno's principal. At the first trial, the Court ruled that there was no proof of negligence, and the case went to the jury on the issue of vicarious liability. A verdict was returned for defendant, and plaintiffs appealed.

While agreeing with the trial court that defendant was not negligent, the Court of Appeals ordered a new trial because of the misstatement of Pennsylvania law on vicarious liability in the instruction to the jury. 3 Cir., 1957, 243 F.2d 331. The trial court had

charged that Bruno's conduct had to be at least in part for the benefit of his employer at the time of the act complained of if plaintiff was to recover. Relying principally on the case of Robert Howarth's Sons, Inc., v. Boortsales, 1939, 134 Pa.Super. 320, 3 A.2d 992, involving an agent who was acting *against,* not *for,* his principal's interest, but who had been armed by his principal with the means of perpetrating a fraud, the Court of Appeals held that plaintiffs could recover notwithstanding that Bruno was acting solely on his own behalf at the time of the offensive acts.

The Court of Appeals also cited §§ 261 and 262 of the Restatement, Agency (1933) as applicable to this situation.

"§ 261. Agent's Position Enables Him to Deceive.

"A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.

"§ 262. Agent Acts for His Own Purposes.

"A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him, under the rule stated in § 261, is not relieved from liability by the fact that the apparent agent acts entirely for his own purposes, unless the other has notice of this."

At the second trial, the case was again submitted to the jury on the question of vicarious liability and again there was a verdict for defendant. The sole question presented by plaintiffs' motion for a new trial is the correctness of the following portion of the Court's charge:

"Therefore, if the agent Bruno, in representing himself as a physician authorized to perform medical examinations was acting in such a manner that his fraud should have been apparent to a person of ordinary prudence in the exercise of reasonable diligence to avoid offensive bodily contact, then the plaintiffs cannot recover."

The plaintiffs argue that the only question that should have been submitted to the jury was whether they were in fact deceived, not whether they were required to exercise reasonable diligence.

This Court cannot concede that such challenge to the instruction has any basis in Pennsylvania law. To the contrary, the decisions in this Commonwealth seem to follow the Restatement, Agency (1933) which says:

"§ 266. Physical Harm Caused by Reliance upon Representations.

"A purported principal or master is subject to liability for physical harm caused to others or to their belongings by their *reasonable reliance* upon the tortious representations of one acting within his apparent authority or apparent scope of employment." (Emphasis supplied.)

While it is true that no Pennsylvania cases citing this section have been called to this Court's attention, it is nevertheless a fact that every single case mentioned by the Court of Appeals in its decision, including Howarth, heretofore cited, is in accord with the Restatement principle.

The parallel with Howarth is by no means remote. The issue of that case was stated thus, 134 Pa.Super. at page 323, 3 A.2d at page 993:

"The question to be determined in the instant case is as follows: Who, as between the seller of personal property and the buyer thereof, is to shoulder a loss occasioned by the fraudulent dealings of a third person active in a transaction between them."

Substitution of the word *insurance* for *personal property* turns that passage into a fair statement of the case at bar. In Howarth, moreover, the court found that the principal had "directly assisted" in the agent's misrepresentation which resulted in the buyer's "reliance and consequent deception." Hence, as between

the principal and the third party buyer, it was the former who had to bear the loss. It is to be especially noted, further, that the court in that case stressed the contrast between the respective conduct of the buyer and the seller (principal), 134 Pa.Super. at page 324, 3 A.2d at page 994, where it said:

"In sharp contrast to [the seller's] careless handling of the transaction, stands [the buyer's] innocent conduct."

Certainly the buyer's conduct would not have been characterized as innocent if the agent's fraud had been apparent to him, or had he failed to exercise reasonable diligence and concern to prevent the fraud. In the instant case there was evidence that Bruno had visited the plaintiffs as a field underwriter on two prior occasions. This alone presented an issue for the jury on the reasonableness of plaintiffs' conduct in submitting to the physical examination complained of.

"The test is whether a man of ordinary prudence, diligence and discretion would believe and have a right to believe that the agent has the authority he pretends to exercise." P.L.E. Agency § 95 (1957).

■ Plaintiffs here seem to contend that the principal is liable if they were in fact deceived, even though they had no reasonable basis or excuse for trusting the agent. That notion, if adopted as law, would place an intolerable burden upon a principal, amounting to an absolute liability. It would mean that whenever anyone is in fact defrauded by an agent, the principal is liable, even though the injured party's conduct had been careless to the point of utter recklessness. It is clear to this Court that the law of a principal's liability does not go so far; he is not yet *caput lupinum*.

■ Furthermore, when the challenged instruction is read in the context of the entire charge, it is believed to have fairly presented the question of Bruno's apparent authority to the jury in accordance with the direction of the Court of Appeals. For instance, an accompanying instruction said:

"The fact that Mr. Bruno may not have been acting on behalf of the company has no bearing on whether the company is liable in this case. If you find that the company facilitated such fraud by its procedures and practice, and that such fraud was committed, then you should bring in a verdict for the plaintiffs. If, on the other hand, you find that the fraud was not committed, or that no enabling act or omission on the part of the insurance company facilitated the fraud, then you should find for the defendant."

Accordingly, since the objection to the instruction is without merit, it is ordered that plaintiffs' motion for a new trial be and the same is hereby denied.