**Edward H. DAVIS, Petitioner,**

v.

**BANK OF ILLINOIS, Respondent.**

Supreme Court of Tennessee.

Jan. 23, 1978.

Roy C. Nelson, Lodge Evans, Elizabethton, for petitioner.

Dan M. Laws, Jr., Elizabethton, for respondent.

## OPINION

COOPER, Justice.

This is an action in guaranty wherein the trial judge and the Court of Appeals found the guarantor to be liable. The petition for certiorari was granted to determine whether the guarantor, an admitted alcoholic, was mentally competent to execute the guaranty agreement.

The Bank of Illinois filed suit in the Circuit Court of Carter County on a guaranty executed by Edward Davis to secure payment of a $10,000.00 loan made by the bank to Landcare Corporation. Davis was one of the principal owners of Landcare. Davis sought to escape liability on the basis, primarily, of mental incompetence brought on by alcoholism. On this issue, the trial judge found "from the testimony of Mr. Lewis that Davis was sober at the time he signed his name to this guaranty agreement." From its review of the evidence, the Court of Appeals concluded:

> The evidence, when viewed in light of the above authorities, does not preponderate against the trial judge's finding that intoxication is not available to the appellant as a defense voiding his liability under the guaranty contract.

Where an action is tried by a circuit judge without the intervention of a jury, the findings of the trial judge and the Court of Appeals are binding on this court to the extent that they concur, if there is any evidence to support the findings. T.C.A. §§ 27–303, 27–301, 27–113. As noted by the trial judge in his findings, Mr. Lewis, the president of Landcare, testified that Mr. Davis was sober at the time he signed the guaranty agreement. In the face of Mr. Lewis' testimony, we have no alternative but to affirm the judgment of the trial court as approved by the Court of Appeals.

Judgment affirmed. Costs incident to the appeal are adjudged against Mr. Davis and his surety.

FONES, BROCK and HARBISON, JJ., concur.

HENRY, C. J., dissents.

HENRY, Chief Justice, dissenting.

I respectfully dissent.

This is an action in guaranty, wherein the trial judge and the Court of Appeals found the guarantor to be liable. The only issue with which we are concerned is whether the guarantor, an admitted alcoholic, was mentally competent to execute the contract of guarantee.

### I.

Landcare Corporation was formed as a diversified holding company in 1973 principally by the petitioner, Davis, who became executive vice president, and his friend and business associate, James A. Lewis, who became president. On November 7, 1973, its board of directors authorized the procurement of a loan from the Bank of Illinois, for the purpose of purchasing and developing a Travelodge Motel. Pursuant to arrangements made by Lewis, the Bank agreed to lend the sum of $10,000.00. A note in that amount, dated November 26, 1977, was signed by the president and surety of the corporation.

To further secure this indebtedness, various contracts of guaranty were executed and filed with the bank. Among them was one dated November 26, 1973, signed by Lewis and Davis as co-guarantors, in which they "jointly and severally guarantee the full and prompt payment" of the underlying note. On December 17, 1973, the loan proceeds were deposited to Landcare's account.

After the execution of the guaranty agreement but before the due date of the note, as extended, but during the life of the guaranty, as extended, the various corporations and individuals, including Landcare and Lewis, fell upon hard times, and bankruptcy ensued. In this state of affairs the Bank brought suit against Davis.

Davis interposed various defenses including that of mental incompetence brought on by alcoholism.

The relevant findings by the trial judge were as follows:

> The Court finds from Mr. Lewis's testimony that Mr. Davis was constantly drunk during this period, and for this reason Mr. Lewis dealt with Mr. Davis early of a morning before be became intoxicated to the point where he didn't know what he was doing.

> The Court finds from the testimony of Mr. Lewis that Davis was sober at the time he signed his name to this guaranty agreement.

> \* \* \* \* \* \*

> It is the law in Tennessee that intoxication on the part of an automobile driver is no defense in a tort action against the driver. This Court is of the opinion that intoxication is no defense against the guarantor (sic) in an action against the guarantor of a note. This Court would observe that *it does not behoove a man who owns property valued at a half a million dollars to assert his own intoxication as a defense against to (sic) a valid legal obligation by him.* (Emphasis supplied.)

The Court of Appeals, after briefly discussing the facts and law surrounding the intoxication issue, reached the following conclusion:

> The evidence, when viewed in light of the above authorities, does not preponderate against the trial judge's finding that *intoxication is not available to the appel-*

*lant as a defense voiding his liability under the guaranty contract.* (Emphasis supplied).

I will not attempt to construe the meaning of the trial judge's holding that "intoxication is no defense against the guarantor (sic) in an action against the guarantor of the note." The law is to the contrary. See *infra.*

Nor will I attempt to construe the meaning and significance of the trial judge's phraseology that "it does not behoove a man who owns property valued at a half a million dollars to assert his own intoxication as a defense against to (sic) a valid legal obligation by him."[1] I presume this is a form of moral value judgment on the evils of strong drink.

It is obvious that we are not confronted with a concurrent finding of fact with respect to the competency issue. The only concurrent finding is that "intoxication is not available to appellant as a defense," a legal proposition, and an incorrect one at that. Our review of the evidence is accompanied by a presumption that the decree of the trial judge was correct "unless the preponderance of the evidence is otherwise." Sec. 27–303, T.C.A.

## II.

It is an established fact that the petitioner, at all times pertinent to this issue, was a practicing alcoholic,[2] with a background of numerous hospitalizations for treatment, rehabilitation, and detoxification. On November 17, 1973, he married and he and his wife went to Florida on their honeymoon. During their stay there he drank heavily and they returned to Tennessee on November 23, 1973. He was admitted to the Carter County Memorial Hospital on November 25, 1973, with an admitting diagnosis of cirrhosis and a final diagnosis of impending liver failure, liver cirrhosis, and post porta-

---

1. Actually the proof shows a *gross* worth of $500,000.00, with no evidence as to the value of the equity. Nor does it show the source of this property, how it was accumulated, or to what extent he participated in its accumulation or management.

2. His associates forced him out of Landcare because of his alcoholic conduct.

caval shunt. Prior to his admission, according to his wife, he was drinking over a pint each day and, according to him, a fifth.

Upon being discharged from Carter County Memorial Hospital on November 27, 1973, he was admitted to Mountain Home Veterans' Hospital for further treatment for his excessive drinking. His confused mental instability was noted by the nurses upon admission. Dr. Lyman A. Fulton testified unequivocally that as of November 27, 1973, Davis did not have the mental capacity to enter into a binding contract.

While I agree with the Court of Appeals that the date of execution is inconsequential to the legal effect of the guaranty agreement where the evidence established that the loan was not made until after the agreement had been signed, the signature date is of critical significance to the determination of mental capacity. That date must be determined in order to validate the trial judge's finding that "Davis was sober at the time he signed his name to this guaranty agreement," a finding in which the Court of Appeals did not concur.

I find no proof in the record to establish the date upon which the agreement was signed. There is proof from which it might be *conjectured* that Davis was sober, but the massive weight of the evidence is to the contrary.

This conjectural proof comes from petitioner's former associate, Lewis. When asked if he would have let petitioner sign the guaranty agreement had he been drunk, he responded:

If he'd a been drunk, I wouldn't, but he was drinking the whole—at all times for about six or eight months. In fact, I put him in the hospital myself seven or eight times, but I always tried to conduct business early in the mornings when Mr. Davis—before he got out of his capacity.

Subsequently Lewis was asked what time of day he signed it and responded: "I would have an *idea* it was in the morning." "I

usually tried to conduct all business with him because of his problem." (Emphasis supplied).

Lewis could not remember the date of execution. At one time he said, "It may have been signed on the 19th." Davis was on his honeymoon in Florida at that time.

This is the only testimony by Lewis relating to the date of execution.

The testimony of Davis sheds no light upon the matter. He has no recollection of signing the guaranty.

The fair import of the undisputed testimony of Mrs. Davis was that, at all times after their return from Florida and for a week following his release from the VA hospital, petitioner was irrational and incapable of transacting business. Her undisputed testimony is that Lewis came to see him every day and brought him whiskey. They drank together and Lewis was indifferent to Mrs. Davis' protest.

I think the evidence preponderates against the trial judge's finding that petitioner was sober at the time of the execution of the contract. *Indeed, there is no proof of such sobriety in the absence of some indication of the date of execution.* From the record before us I cannot conceive of any period from November 17, 1973, through the end of that month when petitioner was mentally capable of transacting business. In reaching this conclusion I accept the rule quoted by the Court of Appeals from II *Williston on Contracts,* § 258 (3d ed. 1959):

In order to make out incapacity, it is necessary to prove that a man was so far intoxicated as to be incapable in fact of understanding the nature of the transaction in which he engaged.

The signature of the petitioner on the guaranty agreement should have been sufficient to have put any prudent lender on inquiry:

[See following illustration]

SIGNED AND SEALED by the undersigned, at Mt. Vernon, Illinois, this _26th_ day of _November_ , 19_73_.

———————————————— (Seal) X ⟨signature⟩ J. H. Lewis ———————— (Seal)

———————————————— (Seal) X ⟨signature⟩ Edward H. Davis ———————— (Seal)

This is the signature that locked in the bank's loan and launched this suit.

It will be noted that the guaranty bears date "this 26th day of November 1973." There is *no* proof that it was executed on any other date. There is a presumption, rebuttable in character, that any written instrument was executed on the day it bears date. *Jackson City Bank & Trust Co. v. Sternburg,* 281 Mich. 313, 274 N.W. 806 (1937) (guaranty agreement); *Keller v. New Jersey Fidelity & Plate Glass Ins. Co.,* 306 Pa. 124, 159 A. 40 (1932) (guaranty); *Bullock v. Power-Heafey Coal Co.,* 98 Neb. 221, 152 N.W. 392 (1915) (partnership contract); *McFarlane v. Louden,* 99 Wis. 620, 75 N.W. 394 (1898) (deed).

The rationale of *S. M. Williamson & Co. v. Ragsdale,* 170 Tenn. 439, 95 S.W.2d 922 (1936) is relevant. There twenty-three members of a church congregation executed an undated guaranty agreement. The Court by *obiter dictum* noted that the presumption was that an undated contract of guaranty was executed on the same date as the note it secured.

Applying this presumption, in the total absence of proof, I would hold that the guaranty agreement was executed on November 26, 1973. On that date petitioner was hospitalized suffering in the throes of a prolonged alcoholic bout and was incapable of transacting business.

I would reverse.