Bachman *v.* Monte (American Mutual Liability Insurance Company, Appellant).

Argued January 19, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*David B. Skillman,* for appellant.

*Everett Kent,* with him *Robert S. Bachman,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 17, 1937:

The appellee was injured in an automobile accident in November, 1933, while she and her husband were passengers in her husband's car then being driven by defendant, John Monte, Mrs. Bachman's brother. Appellant had issued a liability insurance policy covering such an accident. Appellee's husband was the named insured, but the usual omnibus clause in the policy protected Monte as well. Mrs. Bachman brought a negligence action against her brother in March, 1934. Zierden, appellant's branch claim manager, received the service papers from Monte, interviewed him, and took a statement from him. A little later antagonism arose between Monte and the Bachmans, and Monte left the jurisdiction to reside in Connecticut. Because of his alleged failure, after request, to be present at the trial, appellant's counsel did not participate in the trial of the case against Monte, having withdrawn the appearance they entered for him at the institution of suit. As a consequence, no defense was offered and Mrs. Bachman recovered a judgment for $5,505 against Monte, and

brought in appellant insurance carrier as garnishee. In the trial of the garnishment proceeding the jury found a verdict for plaintiff, and from the judgment which followed the garnishee has appealed.

In the garnishment proceeding appellant admitted the issuance of the policy and the fact that it was in force at the time of the accident, but averred in defense of liability that Monte, the defendant, had failed to comply with the provision of the policy that the "insured . . . shall render every assistance and co-operation in his power in the investigations of accidents and in the settlements and defenses of claims and suits." This was the issue primarily raised. By the testimony of counsel and others, appellant endeavored to show that prior to trial it had made numerous efforts, by correspondence and otherwise, to induce Monte to return to Pennsylvania to testify at the trial. The trial was continued twice because of his absence. It was testified that appellant's representatives, one its attorney in Connecticut, had visited Monte at his residence in that state prior to trial and urged him to attend, explaining that otherwise his rights under the policy would be jeopardized. He was offered money to cover the expenses of the trip, but he refused to come, or even give a statement, stating as his reason the ill-feeling between himself and the Bachmans and his fear that his brother-in-law might again issue a capias against him, as was previously done just after suit was begun. When the case was finally called for trial, appellant's counsel, who were likewise acting as Monte's counsel, had his name called in the courthouse, but he did not answer. They thereupon withdrew from the case, and the trial proceeded.

At the trial, the statement which Monte gave to Zierden after the accident, setting forth the circumstances of the accident, was read to the jury, without objection. In the light of this statement, it is obvious that if Monte had appeared at the trial he could have given testimony tending to fix liability for the accident in which the

plaintiff was injured, on the owner and driver of the car which collided with the car Monte was driving and which latter car was insured by appellant. From a factual situation, the latter was prejudiced by Monte's absence from the trial; from a legal standpoint, appellant was benefited by Monte's absence, for such absence, unless appellant was responsible for it, amounted in law to such lack of coöperation on the part of the insured as relieved appellant of its liability under the policy.

Plaintiff did not contradict appellant's evidence of Monte's failure to coöperate but she did allege that Monte stayed away from the trial because he had been urged by Zierden to do so. Thomas Monte, a brother of John Monte and of Mrs. Bachman, testified that he heard a conversation between John Monte and Zierden. In this conversation John expressed ill-feeling toward Robert Bachman, his sister's husband, and "said he didn't want to see him [Bachman] get a penny out of this case." The witness said that Zierden then suggested that it would help us (evidently meaning the insurance company) if John Monte did not appear at the trial, "so John said, 'I will do that then.' So it was agreed that John would not appear at this trial." Robert Bachman also testified that Zierden had told him that he, Zierden, had been out to see John Monte and that neither Mrs. Bachman nor the witness could expect any help from John Monte as the latter was bitter against them both. Zierden said further, according to this witness, that "if it came to a question of trial, Mrs. Bachman couldn't hope to recover anything because John Monte would do everything in his power, everything that Zierden wanted him to say, or Zierden's company, as he expressed it to me, to keep her from recovering anything because of this antagonism." He also testified that "Zierden said that the best defense that the company could put up was a defense of non-coöperation, and that the only way they could do that was if Monte would not appear at the trial, and John Monte absolutely promised me he would

not appear at that trial." The witness testified that he said to Zierden: "Do you mean to tell me that you told John Monte not to come to the trial of this case?" and Zierden answered: "Well, isn't that the only chance my company has of winning it? . . . It is my duty to do anything I can to help my company, that is my right. I told him [Monte] to get out of this town, to stay out of this town and not to come to that trial under any circumstances."

Zierden testified that he told John Monte that "he would have to coöperate in the defense of this suit" and that "Monte stated he anticipated leaving town and making his residence in some other state, . . . and that as soon as he established a residence he would communicate with my office." He testified that his company had endeavored to have him on hand for the trial but they were unsuccessful. He denied having any conversation with Monte about telling him to stay away from the trial. He denied also the conversation with Bachman in reference to Monte staying away from the trial.

The trial judge instructed the jury that if they were satisfied that Monte was induced to stay away by the insurance company, a verdict should be returned in favor of the plaintiff, but that if they concluded that he stayed away on his own volition, a verdict should be returned for the defendant.

The jury having found a verdict in favor of the plaintiff, defendant asked for judgment n. o. v. and for a new trial. Both of these motions were refused, after an opinion filed by the court in banc. In that opinion the court correctly held: "It is plain that the insurance company could set up the defense, which it did in the present action, but the burden is on it not only to show that it requested Monte to appear, but that it was prejudiced by his non-appearance at the trial. . . . It will be noted that the clause under consideration does not in so many words, require Monte's attendance at the trial such as is found in some of the cases, but it does require

'upon request' that he shall coöperate. In our view that was broad enough to compel him to attend the trial when the insurance company requested him to do so, but it is obvious that the best way for the insurance company to avoid the payment of a large amount of money under the policy, was to induce Monte . . . to stay away from the trial. . . . If the conduct of the insurance company is blameless and above board, then Monte's failure to appear was a good defense, but if it entered into a conspiracy to defraud the plaintiff by having Monte stay away from the trial, then his nonattendance at the trial is not a defense to the action. This subject of collusion must necessarily be one for the jury."

Appellant argues that the evidence as to Zierden's alleged advice to Monte to stay away from the trial is inadmissible because such advice was an alteration of the terms of the policy and Zierden had no authority to alter the policy's terms, he being only a claim adjuster.

In answer to this the court below held that Monte was justified in acting upon Zierden's representation and that the principle set forth in *Arlotte v. Nat. Liberty Ins. Co.*, 312 Pa. 442, 167 A. 295, is applicable. In that case this court held that an insurer will be precluded from objecting to the failure of the insured to give written notice and file proofs of loss and to institute action within the time limited by the contract, where such failure is caused by a false representation of the insurer's agent that the loss reported does not come within the coverage of the policy issued by it. In the opinion this court cites with approval the statement of Mr. Justice WALLING in *Gough v. Halperin*, 306 Pa. 230, 159 A. 447, reading as follows: "The company cannot take advantage of the insured's inactivity caused directly by the assurance of its own authorized agent."

In view of the facts that Zierden was shown to be the branch claim manager for the appellant company, that he made an investigation of the accident giving rise to

this action, and that as a representative of the appellant company he interviewed John Monte and engaged counsel to represent Monte in this case, we think there was evidence to show that he was acting within the apparent scope of his authority when he advised Monte (as the jury found he did) to stay away from the trial.

Appellant contends that if Zierden did instruct Monte not to appear at the trial, his act was fraudulent and unlawful and therefore palpably beyond the scope of his authority as appellant's agent. Corpus Juris Secundum, Vol. 3, section 257, lays down this principle: "Acts of fraud by an agent, committed in the course of his employment, are binding on the principal even though the principal did not know of or authorize the commission of the fraudulent acts [citing cases]. . . . To bind the principal it must appear that the representations were made during the existence of the agency and in connection with the particular transaction or act which the agent was authorized to effect or do." In the instant case, the facts offered by the plaintiff, if credited by the jury, bring the act of Zierden in directing Monte to stay away from the trial, within the principle just quoted. See *B. & L. Assn. v. Real Estate Title Co.,* 156 Pa. 181, 192, 27 A. 62, where it was held that a principal was liable for the fraudulent acts of its officer "as it was his position as such [officer] that gave him the opportunity [to do the wrongful act]." In *Mick v. Royal Exch. Assur.,* 87 N. J. L. 607, 91 A. 102, it was held that a principal is liable for the fraud of his agent acting within the scope of his authority, whether or not the principal would benefit by the success of the fraud. In that case Mr. Justice PARKER, speaking for the Court of Errors and Appeals of New Jersey, said: "The responsibility of an innocent principal for the fraud of an agent has been one of the vexed questions of the law. . . . As was said by Mr. Justice WILLES in the leading case of *Barwick v. English Joint Stock Bank,* L. R. 2 Exch. 259, 36 L. J. Exch. 147, 12 E. R. C. 298: 'In all these cases it may be

said, as it was said here, that the master had not author-
ized the particular act, but he has placed the agent in
his place to do that class of acts, and he must be answer-
able for the manner in which that agent has conducted
himself in doing the business which it was the act of his
master to place him in!' " In *Wilson v. Sale,* 41 Pa. Su-
perior Ct. 566, 571, that court, speaking through Presi-
dent Judge RICE, quoted with approval the following
from *Griswold v. Gebbie,* 126 Pa. 353, 17 A. 673: "The
general rule that a principal is responsible for the mis-
representations of his agent within his authority, is be-
yond question, and the better opinion is that as to third
persons affected by his acts or words, it is the apparent
scope of his authority, and not his actual instructions,
that must govern. That is the basis on which the busi-
ness of the world in the present day is transacted, and
the rule should be enforced in a liberal spirit, with re-
gard to the actual habits of the community." The fol-
lowing principle is laid down in section 261 of the Re-
statement of the Law of Agency, Vol. 1: "A principal
who puts an agent in a position that enables the agent,
while apparently acting within his authority, to commit
a fraud upon third persons is subject to liability to such
third persons for the fraud." It is true that there are
acts of agents which are forbidden by statute or which
are inconsistent with public policy and therefore void,
but the law recognizes a distinction between such acts
and acts which are "contrary only to good faith and fair
dealing and where it affects individual interests and
nothing else." See *Lyon, to use, v. Phillips,* 106 Pa. 57,
66.

Appellant claims that even if there was evidence that
Zierden urged Monte to stay away from the trial, this
"collusive agreement" was later repudiated by the attor-
neys for the insurance company, that the company's at-
torney "repeatedly called on Monte to come to the trial
and representatives of the company called on him per-
sonally and offered every inducement to come to the

trial," and appellant argues that the court should have, in disposing of the motion for judgment n. o. v., considered this evidence of repudiation of the alleged collusive agreement. The fourth assignment of error is based on the excerpt from the charge of the court, reading as follows: "If you should find from the testimony in this case that John Monte stayed away because the insurance company told him to stay away, then your verdict would be in favor of the plaintiff; because the insurance company had no right to enter into any conspiracy or in a collusive proceeding to keep John Monte away to defraud Mrs. Bachman of her rights." However, in another part of the charge the court said: "Ask yourselves whether you believe from the evidence in this case that John Monte stayed away by reason of the inducement which was held out to him by Zierden and by reason of the fact that he was waiting to be notified by Mr. Zierden who, if you believe the testimony, was the one who was to contact himself with him, and, I believe, the expression was he should pay attention to nobody else except to Zierden; or do you believe the testimony on the part of the insurance company that they bona fide did everything they could to have John Monte come here and offered to pay his expenses, offered to give him the cash and if it wasn't enough to give him more, and that they urged him in every way possible to come here and make this defense. If you believe the witnesses for the insurance company upon that issue, which I say is the important issue, then your verdict ought to be in favor of the insurance company, the defendant. If, on the other hand, you believe that the insurance company itself kept him away, then it was such a collusion as would justify his not appearing here in this case." Whether or not the appellant, acting through its representatives, induced Monte to stay away from the trial or urged him to attend the trial, was an issue of fact for the jury. "When proof depends on oral testimony, it is the province of the jury to decide": *Reel v. Elder,* 62 Pa. 308,

and *Nanty-Glo Borough v. Am. Surety Co.,* 309 Pa. 236, 163 A. 523.

We find no error in the submission of this case to the jury.

The judgment is affirmed.