772 A.2d 456

The TRAVELERS CASUALTY & SURETY
COMPANY, Formerly Aetna Casualty
and Surety Company, Appellee,

v.

Patrick CASTEGNARO and James Fedele, t/d/b/a
Associated Insurance Agencies, Appellees.

v.

Utica Mutual Insurance Company, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 11, 2000.

Decided June 7, 2001.

248

Larry Alan Silverman, Pittsburgh, for appellant, Utica Mut. Ins. Co.

Dianne S. Wainwright, Avrum Levicoff, Pittsburgh, for appellee, Travelers Cas. & Sur. Co.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

In this appeal, Appellant Utica Mutual Insurance Company ("Utica") argues that the Superior Court improperly reversed the order of the trial court granting Utica's motion for judgment on the pleadings premised on an exclusion in the insurance contract between Utica and Associated Insurance Agencies. We agree, and therefore reverse.

Patrick Castegnaro was an insurance agent authorized by Associated Insurance Agencies ("Associated") to bind cover-

age on its behalf for Aetna Casualty and Surety Company ("Aetna").[1] From January of 1988 through April of 1992, Castegnaro fraudulently submitted forged cancellation notices or failed to process renewals for at least six Aetna insurance policies. In each instance, Castegnaro knowingly misrepresented to the insureds that their coverage with Aetna had been renewed. The insureds, believing that their coverage with Aetna had been renewed, remitted checks for the premiums to Castegnaro. Castegnaro then fraudulently cashed the premium checks. Eventually, Castegnaro confessed to the fraud and Aetna provided retroactive coverage to the defrauded insureds for the periods during which Castegnaro had represented that the coverage was in place. Based on Castegnaro's actions, Aetna filed suit against Associated for negligence and vicarious liability.

During the relevant time period, Associated was insured under a policy issued by Utica which provided coverage for claims arising out of negligent acts, errors or omissions in the conduct of Associated's business. Pursuant to the policy, Associated gave timely notice to Utica of Aetna's claims. Utica retained counsel to defend Associated, but informed Associated that it would not provide coverage for any part of a settlement or judgment entered against Associated. On April 29, 1996, Associated and Aetna entered into a stipulation providing for entry of a consent judgment and an assignment of Associated's rights against Utica under its error and omissions liability policy to Aetna.[2] Pursuant to the consent judgment, judgment was entered against Associated on April 30, 1996, in the amount of $225,968.18.

On February 3, 1997, Aetna commenced execution of the judgment by filing and serving interrogatories upon Utica as garnishee. Utica answered the interrogatories and asserted, in New Matter, that its policy did not cover Associated's claim

1. Aetna Casualty and Surety Company is now Travelers Casualty and Surety Company.

2. Aetna received a default judgment against Castegnaro on which they have been unable to collect. The default judgment is not at issue in the instant case.

based upon Exclusion 4 in the policy which precludes coverage for "[a]ny liability for money received by an insured. . . ." (Ins. Policy p. 6, R.R. at 219a). Utica then filed a Motion for Judgment on the Pleadings and Aetna filed a Cross Motion for Summary Judgment.

Finding that Exclusion 4 plainly and unambiguously excluded coverage for Associated's lost premiums, the trial court granted Utica's Motion for Judgment on the Pleadings. The trial court noted that Aetna admitted in its Reply to Utica's New Matter that Castegnaro was "an insured" under the policy and, consequently, the trial court rejected Aetna's argument that the phrase "money received by an insured" rendered Exclusion 4 ambiguous. Aetna subsequently appealed to the Superior Court.

The Superior Court reversed the order of the trial court, finding that Exclusion 4 did not preclude coverage for Associated. The Superior Court reasoned that "[c]learly it would have been reasonable for Associated to expect coverage to be foreclosed if it had received or been credited with the premiums. It is not reasonable, however, to expect coverage to be foreclosed by the terms of this exclusion where Associated's agent or employee steals the premiums." *Travelers Casualty and Surety Co. v. Utica Mutual Ins. Co.*, 737 A.2d 1288, slip op. at 7 (Pa.Super. 1999). The Superior Court further noted that "[a]bsent explicit language in the policy permitting imputation of an additional insured's conduct to the named insured, we find such an interpretation to be contrary to the objectively reasonable expectation of the named insured." *See id.* Subsequently, Utica filed a Petition for Allowance of Appeal to this Court and we granted allocatur.

Our review of a trial court's decision to grant or deny judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether there were facts presented which warranted a jury trial. *See Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 86 (1995). In conducting this review, we look only to the pleadings and any

documents properly attached thereto. *See id.* Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary. *See id.* at 429, 664 A.2d 84 (citing *Bata v. Central–Penn National Bank,* 423 Pa. 373, 224 A.2d 174 (1966)).

 "Interpretation of an insurance policy is a question of law, subject to plenary review by this Court." *State Farm Mutual Auto Ins. Co. v. Universal Underwriters Ins. Co.,* 549 Pa. 518, 701 A.2d 1330, 1331 (1997)(citing *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234 (1994)). When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract. *See Bateman v. Motorists Mutual Inc. Co.,* 527 Pa. 241, 590 A.2d 281, 283 (1991)(citing *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983)).

Here, the language of the insurance policy, in pertinent part, reads as follows:

**SECTION III – WHO IS AN INSURED**

The unqualified word "insured" whenever used in this policy means:

1. The individual, partnership, or corporation designated as the named insured in the Declarations;
2. Any partner, executive officer, director or employee of the Named insured, while acting within the scope of his or her duties on behalf of the Named Insured.

. . .

**SECTION IV – EXCLUSIONS**

This insurance does not apply to any claim arising out of:

4. Any liability for money **received by an insured** or credited to an insured for fees, premiums, taxes, commissions, loss payment, or escrow or brokerage monies.

(Ins. Policy pp. 5–6, Rep. R. at 161a–162a (emphasis added)).

Aetna claims that Associated never actually "received" the premiums for purposes of Exclusion 4 and is therefore entitled

to coverage for the lost premiums. Aetna argues that the purpose of Exclusion 4 is to prevent a windfall in a situation where an insured retains premiums and then shifts liability to its insurance carrier to cover a claim for those premiums. Because Castegnaro absconded with the premiums, Aetna contends that Associated never truly received the premiums and thus, no windfall situation exists here. Consequently, Aetna argues that it is not reasonable to impute Castegnaro's receipt of the premiums to Associated and deprive Associated from receiving coverage. We disagree.

■ The plain language of Section III, defining who is "an insured," and Exclusion 4 of the policy clearly precludes coverage for the premiums stolen by Castegnaro. As an agent of Associated who was acting within the scope of his duties on behalf of Associated at the time he received the premiums, Castegnaro was undoubtedly "an insured" under Section III of the policy. Exclusion 4 excludes coverage for money received by "an insured" and because Castegnaro was "an insured" under the policy, coverage for any stolen premiums he received is necessarily precluded.

■ We also find, contrary to Aetna's assertions, that it is reasonable to impute Castegnaro's receipt of the premiums to Associated. An agent of a company, such as Castegnaro was to Associated, is more properly characterized as an extension of that entity, rather than a separate part of it. In the context of vicarious liability, a principal is liable to third parties for the frauds, deceits, concealments, misrepresentations, torts, negligent acts and other malfeasances of his agent, even though the principal did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them, as long as they occurred within the agent's scope of employment. *See Aiello v. Ed Saxe Real Estate, Inc.,* 508 Pa. 553, 499 A.2d 282, 285 (1985) (citing *Bachman v. Monte,* 326 Pa. 289, 192 A. 485 (1937)). This rule of liability is based on the premise that it is more reasonable for a principal, who has placed the agent in the position of trust and confidence, to be the one to suffer from

the wrongful act of a third person, as opposed to an innocent stranger. *See id.* (citing *Cairns v. Pepper*, 133 Pa. 114, 19 A. 336 (1890)). Although the issue at hand concerns contract interpretation and not vicarious liability, the reasoning in *Aiello* is clearly applicable to the circumstances of this case. Here, Associated placed Castegnaro in a position of trust and confidence when it hired him as an agent authorized to bind coverage on behalf of Aetna. Because Castegnaro was acting within the scope of this position when he defrauded Aetna's policy holders and received the premium checks, it is reasonable to impute the receipt of this money to Associated, even though Associated was unaware of Castegnaro's fraudulent scheme.

For the foregoing reasons, we conclude that the trial court properly determined that Exclusion 4 precludes coverage for Associated's lost premiums. We therefore reverse the order of the Superior Court and reinstate the trial court's order granting Utica's Motion for Judgment on the Pleadings.

Justice NEWMAN did not participate.