**Isaac v. Jameson Memorial Hospital**

C.P. of Lawrence County, no. 11238 of 1999 C.A.

*Richard J. Schubert,* for plaintiffs.
*James W. Kraus* and *Kathryn M. Kenyon,* for defendant Jameson Memorial Hospital.
*James A. Woods,* for defendant Bassaly.

MOTTO, *J.,* November 15, 2002—Before being admitted to Jameson Memorial Hospital, Catherine Isaac

executed a Sterilization Consent Form authorizing her doctor, Rifaat Bassaly, to tie her fallopian tubes. This procedure was to be done when the doctor delivered her child by caesarian section.

Mrs. Isaac reported to the hospital on November 21, 1997 and signed an "acknowledgement" for the childbirth delivery. At that time, Mrs. Isaac declined to sign an acknowledgment for the tubal ligation. Later, when Mrs. Isaac was in labor, she did sign an acknowledgment for the tubal ligation, but she later orally withdrew that consent by her communication to a hospital nurse. Nurse Fronius duly noted that oral withdrawal of consent in the nursing notes to Mrs. Isaac's chart.

Soon thereafter, Dr. Bassaly delivered Mrs. Isaac's child and tied her tubes. The hospital claims Mrs. Isaac had changed her mind yet again, but Mrs. Isaac maintains that she did not. Seemingly, Dr. Bassaly performed the tubal ligation without any knowledge of Mrs. Isaac's withdrawal of consent. There were no problems in or complications arising from the childbirth.

According to Mrs. Isaac, she first realized that her tubes had been tied only after she had been discharged for some time.

Plaintiffs filed suit against both Dr. Bassaly and Jameson Hospital. Count I is by Mrs. Isaac against Dr. Bassaly; Count III, also by Mrs. Isaac, is against Jameson Hospital. Counts II and IV are both for loss of consortium by Mr. Isaac and are respectively against Dr. Bassaly and Jameson Hospital.

Jameson Hospital filed a motion for summary judgment as to Count II. The motion for summary judgment was orally argued and both sides have submitted briefs.

Jameson's brief argues that an action for lack of formal consent can only be successfully brought against a physician and cannot be properly brought against a hospital.

The most pertinent parts of Count II are in paragraph 18 and read as follows:

"(a) In that this defendant did not sufficiently supervise, train, and/or continually educate its agents, servants, staff, physicians, nurses, medical personnel and/or employees with regard to the appropriate procedures pertaining to documenting and/or *communicating* the *informed consent* of patients *prior to* medical treatment and/or *surgical procedures*[.]

"(b) *Failing* to *provide* agents, servants, staff, *medical personnel,* and/or employees to document and/or *communicate* [each of] the informed consent private medical treatments and/or surgical procedures[.]

"(c) *Failing to adopt appropriate procedures* for documenting and/or *communicating* the [lack of] informed consent of patients *prior* to medical treatments and/or *surgical procedures;* and/or,

"(d) *Failing* to properly and *timely document* patients consent and/or *refusal to consent* to a procedure and/or treatment *prior to administering that treatment* and/or performing that procedure; and/or,

"(e) *Neglecting* to *properly* alter, amend and/or *remove* plaintiff Catherine Isaac's *rescinded consent;* and/or,

"(f) Disregarding, ignoring and/or *not sufficiently acting upon* the plaintiff's desires; and/or,

"(g) *Failing* to properly and *timely communicate* the wishes, request and/or *desires* of plaintiffs regarding their decision not to consent to the tubal ligation procedure,

as recommended by defendant, Rifaat Bassaly M.D.; and/or,

"(h) Concealing from plaintiff, Catherine Isaac, the fact that a tubal ligation was *to be performed* and/or *had been performed;* and/or,

"(i) *Failing to exercise* due care in the examination, supervision, *treatment* and/or *general care* of plaintiff, Catherine Isaac, with respect *to preventing* the tubal ligation by defendant, Rifaat Bassaly, M.D. when they knew she *had not consented* to that procedure; and/or,

"(j) *Failing to fulfill the expectations* of the plaintiff with respect to *documenting and communicating* the patients [lack of] informed consent prior to the *performance of a surgical procedure,* when plaintiffs *relied upon this defendant's medical trust, knowledge* and *skill.*" Complaint, paragraph 18. (emphasis added)

These excerpts make it clear that Mrs. Isaac is not bringing an action against the hospital based solely on a lack of informed consent, but rather on the theory that a negligent handling of the withdrawal of her consent resulted in negligent treatment. What is alleged is a lack of due care by the hospital, and due care would, according to the plaintiffs, necessarily exercising reasonable care to prevent a surgical procedure from occurring in contravention of Mrs. Isaac's wishes.

The action sounds in corporate negligence and for vicarious liability for professional negligence. For vicarious liability to lie, the plaintiffs would need to establish that Nurse Fronius was negligent in the performance of her professional duties resulting in harm to Mrs. Isaac. This would be so because a principal is liable to third parties for all negligent acts or malfeasances of the agent

without knowledge of or authorization by the principal, as long as the act in question occurred within the scope of the agent's employment. *Travelers Casualty & Surety Co. v. Castegnaro,* 565 Pa. 246, 772 A.2d 456 (2001). Relating to vicarious liability of a hospital due to the negligence of a nurse, see *Vorhees v. Trustees, University of Pennsylvania,* 33 Phila. 302 (1997); Phila. County Rpts. Lexis 16 (1997). Summary judgment was denied (in part) because a hospital could be held liable for the professional negligence of a nurse in *Radbill v. Chambersburg Hospital,* 46 D.&C.3d 431 (1986); Pa.D.&C. Lexis 269 (1986).

On the other hand, under corporate negligence liability would run directly from the hospital to the patient based upon the policies, action or inaction of the institution itself. *Welsh v. Bulger,* 548 Pa. 504, 513, 698 A.2d 581, 585 (1997).

When a hospital fails to ensure a patient's safety and well-being, Pennsylvania courts will impose liability. *Whittington v. Episcopal Hospital,* 768 A.2d 1144 (Pa. Super. 2001). This desire to protect individuals has led to the adoption of the doctrine of corporate negligence if it did not fulfill any of the following duties:

"[1] a duty to select and retain only competent physicians;

"[2] a duty to oversee all persons who practice medicine within its walls as to patient care; and

"[3] a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients." *Rauch v. Mike-Mayer,* 783 A.2d 815, 827 (Pa. Super. 2001). For a prima facie case, the plaintiff would have to demonstrate here that:

(1) the hospital (including its staff) fell short of the standard of care;

(2) the hospital had actual or constructive notice of the acts or omissions which created the harm; and

(3) that such conduct was a substantial factor in bringing about the harm. *Id.* at 827.

With the knowledge of the withdrawal of consent being imparted to Nurse Fronius and that knowledge being constructively attributed to Jameson Hospital resulting in harm, all of the three factors have been represented. Indeed, the failure of a nurse to report information to a doctor can contribute to the liability of the hospital even where the doctor himself is not found to be liable. *Vorhees v. Trustees, University of Pennsylvania, supra.*

Consequently, both respondeat superior and corporate negligence are legal theories of recovery both viable at this point. At the very least, issues of fact exist as to the role of Jameson in responding to plaintiff's change of mind relative to having a surgical procedure performed. Accordingly, defendant's motion for summary judgment must be denied.

## ORDER

And now, November 15, 2002, in accordance with the opinion of even date herewith, it is ordered, adjudged and decreed that the motion of defendant Jameson Hospital for summary judgment is denied.