IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Baloga,                              :
                    Appellant                :
                                             :
                                             :
            v.                               :
                                             :
Brian D. Jacisin, Robert                     :
Caruso, Jonathan Fry,                        :    No. 1447 C.D. 2023
and Jeffrey Frankenburger                    :    Submitted: April 8, 2025


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MATTHEW S. WOLF, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED:  May 13, 2025


            Michael Baloga (Baloga) appeals from the Dauphin County (County)
Common Pleas Court's (trial court) August 15, 2023 order sustaining the preliminary
objections (Preliminary Objections) filed by Brian D. Jacisin (Jacisin), Robert
Caruso (Caruso), Jonathan Fry (Fry), and Jeffrey Frankenburger (Frankenburger)
(collectively, Appellees), and dismissing Baloga's complaint alleging Wrongful Use
of Civil Proceedings (Complaint).  There are two issues before this Court: (1)
whether the trial court erred by ruling that Baloga's Complaint failed to state a cause
of action that survived sovereign immunity absent allegations demonstrating that
Appellees acted outside the course and scope of their employment; and (2) whether
the trial court erred by holding that Baloga failed to plead facts sufficient to state a
claim for gross negligence.  After review, this Court affirms.

            In May 2018, the Wyoming Borough (Borough) Council's (Borough
Council) president and vice-president sent a letter dated May 10, 2018 (May 10

Letter) to the State Ethics Commission (SEC) reporting that the Borough had received information that contractors working on a grant-funded Borough roadway project installed a driveway with a drainpipe on Borough Council member Baloga's property at no charge after Baloga had been involved in awarding the roadway project contract. The May 10 Letter alleged that Baloga's driveway was constructed using state grant funds in violation of the Public Official and Employee Ethics Act[1] (Ethics Act) and requested that the SEC investigate and file appropriate charges.

On May 24, 2018, SEC Executive Director/Director of Investigations Jacisin drafted a memo to SEC Executive Director Caruso recommending that the SEC investigate the allegations against Baloga on an *own motion* inquiry.[2] Thereafter, Jacisin and Caruso opened a preliminary inquiry based upon the May 10 Letter. By October 5, 2018 letter, Caruso notified Baloga of the allegations that an investigation had begun, and of the SEC's preliminary findings. In February 2019, the SEC issued an *Investigative Complaint/Findings Report* (Findings Report) against Baloga, which provided, in relevant part:

> [] Baloga, in his capacity as a member of the [] Borough Council, . . . utilized the authority of his public office for the purpose of obtaining a pecuniary benefit of no less than $3,840[.00], when he directed and/or authorized Borough personnel/employees and/or a vendor of the Borough to install a driveway/access way to his property at Borough expense and/or as part of an unrelated Borough Public Works project.

Complaint, Ex. D, Reproduced Record (R.R.) at 71a.

Thereafter, Baloga engaged in communications with SEC Deputy Executive Director Frankenburger and signed a Consent Agreement. Baloga claims he notified Frankenburger that he never directed anyone to provide him with a free

---

[1] 65 Pa.C.S. §§ 1101-1113.
[2] The SEC may initiate a preliminary inquiry upon a complaint signed under penalty of perjury by any person or upon its own motion. 65 Pa.C.S. § 1108(a).

driveway and he wanted the Consent Agreement to reflect such. However, on May 22, 2019, Frankenburger withdrew the Consent Agreement. *See* Complaint, ¶ 7. On September 12, 2019, Baloga, acting pro se, filed an Answer to the Findings Report. Baloga then retained counsel who filed an Amended Answer to the Findings Report and requested an evidentiary hearing. On March 5, 2021, approximately two years after the Investigative Division issued its Findings Report, and before the evidentiary hearing took place, the SEC withdrew and discontinued the proceedings against Baloga, stating that certain witnesses' recollections were inconsistent with previous statements and that one relevant witness had passed away.

On March 4, 2022, Baloga commenced this action in the Philadelphia County Common Pleas Court (Philadelphia Common Pleas) by writ of summons. On June 10, 2022, Baloga filed the Complaint. Baloga attached to the Complaint several exhibits including: (A) the May 10 Letter; (B) a May 24, 2018 memorandum from Jacisin to Caruso recommending that the SEC initiate an *Own Motion* inquiry; (C) an October 5, 2018 SEC letter informing Baloga of the investigation; (D) the Findings Report; (E) Baloga's Amended Answer to the Findings Report; (F) Baloga's Request for Issuance of Subpoenas; and (G) a Praecipe to Withdraw Investigative Complaint/Findings Report and Discontinue Matter. On June 15, 2022, the parties stipulated to the action's transfer from Philadelphia Common Pleas to the trial court. On July 19, 2022, Philadelphia Common Pleas transferred the case to the trial court.

On October 4, 2022, Appellees filed the Preliminary Objections, demurring therein that sovereign immunity barred Baloga's action[3] and that Baloga

---

[3] Pursuant to section 11 of [a]rticle 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy

3

had failed to allege sufficient facts to establish gross negligence. On October 24, 2022, Baloga filed a Response in Opposition to the Preliminary Objections. Appellees and Baloga filed supporting briefs. The trial court heard oral argument on July 7, 2023. On July 10, 2023, the trial court sustained the Preliminary Objections, but granted Baloga leave to amend the Complaint. With respect to the first Preliminary Objection, the trial court was "persuaded that [Baloga's] **Complaint did not allege facts of misconduct which fell outside of the statutorily-imposed duty to investigate to state an exception to statutory immunity**." R.R. at 18a (emphasis added). Regarding the second Preliminary Objection, the trial court explained: "[Baloga] failed to adequately plead sufficient facts to establish that [Appellees] acted with the requisite state of mind to state a claim for gross negligence under [Section 8351 of what is commonly referred to as the Dragonetti Act,[4]] 42 [Pa.]C.S. § 8351." R.R. at 18a.

Baloga elected not to amend the Complaint and, instead, reduced the trial court's July 10, 2023 order to a judgment[5] and appealed to this Court.[6] On

> sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa.C.S. § 2310. The General Assembly has identified 10 negligent acts specifically exempted from sovereign immunity. *See* Section 8522 of the act commonly referred to as the Sovereign Immunity Act, 42 Pa.C.S. § 8522. Wrongful use of civil proceedings is not among them.

[4] 42 Pa.C.S. §§ 8351-8354.

[5] "An order that sustains preliminary objections, but with leave to file an amended complaint, is generally considered to be interlocutory and not a final, appealable decree." *Hionis v. Concord Twp.*, 973 A.2d 1030, 1034 (Pa. Cmwlth. 2009). Notwithstanding, "a plaintiff who chooses not to file an amended complaint may appeal by filing a praecipe with the trial court to dismiss the original complaint with prejudice. In this way, the plaintiff can convert an interlocutory order into [a] final and appealable order." *Id*. at 1035-36.

[6] > [This Court's] review of a decision by a trial court sustaining preliminary objections is limited to a determination of whether the trial court abused its discretion or committed an error of law, or whether constitutional rights were violated. In an appeal

August 23, 2023, the trial court ordered Baloga to file a Concise Statement of Matters Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On September 13, 2023, Baloga filed his Rule 1925(b) Statement. On November 17, 2023, the trial court filed its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).

Baloga first contends that the trial court erred by finding as a matter of law at the preliminary objection stage that sovereign immunity bars Baloga's action because Appellees acted within the scope and course of their employment.[7] Specifically, Baloga argues that a determination of whether Appellees were acting within the course and scope of their employment is a fact-intensive question normally reserved for the jury, and the trial court erred by reaching that conclusion at this stage.

> In *La Frankie v. Miklich*, . . . 618 A.2d 1145 (Pa. Cmwlth. 1992) (en banc), [this Court] observed:
>
>> [T]he proper test to determine if a Commonwealth employee is protected from liability pursuant to 1 Pa.C.S. § 2310 and [Section 8522 of what is commonly known as the Sovereign Immunity Act], 42 Pa.C.S. § 8522[,] is to consider whether the

---

challenging the sustaining of preliminary objections in the nature of a demurrer, we must determine "whether on the facts averred, the law states with certainty that no recovery is possible." *Hawks by Hawks v. Livermore*, . . . 629 A.2d 270, 271 n.3 ([Pa. Cmwlth.] 1993). The test for sustaining preliminary objections is whether, based on the pleadings, it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish a right to relief. Argumentative allegations or expressions of opinion are not accepted as true.

*Drack v. Tanner*, 172 A.3d 114, 118 n.6 (Pa. Cmwlth. 2017) (citations omitted).

[7] Importantly, the trial court held that the "Complaint did not allege facts of misconduct which fell outside of the statutorily-imposed duty to investigate to state an exception to statutory immunity." R.R. at 18a. The trial court **did not conclude *as a matter of law* that Appellees acted within the scope and course of their employment**.

Commonwealth employee was acting within the scope of his or her employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the act fits within one of the [10] exceptions to sovereign immunity.

*La Frankie*, 618 A.2d at 1149.  On the other hand, if a defendant who is a Commonwealth employee was not acting within the scope of [his] employment, he cannot claim the affirmative defense of sovereign immunity.

*Schell v. Guth*, 88 A.3d 1053, 1067 (Pa. Cmwlth. 2014).

The Pennsylvania Supreme Court has observed:

Pennsylvania's sovereign immunity statute . . . turns on whether a public employee was acting within "the scope of [his] duties." [1 Pa.C.S. § 2310.]  This Court has interpreted that language as embracing the common law "scope of employment" inquiry, [*Justice v. Lombardo*, 208 A.3d 1057, 1068 (Pa. 2019),] which we analyze using the factors set forth in the Restatement (Second) of Agency.  Under that test, an employee's conduct falls within [his] scope of [] employment if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master[;] and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228 (1958).  The Restatement also makes clear that the "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.*, § 228(2).

6

*McGuire v. City of Pittsburgh*, 285 A.3d 887, 892-93 (Pa. 2022) (footnotes omitted).

> [The Pennsylvania Supreme Court has] long held that whether a particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury. We have explained that **the only exception to this well-established rule is where neither the facts nor the inferences to be drawn from them are in dispute**. In such a case, the court may decide the scope[-]of[-]employment question as a matter of law. However, where more than one inference may be drawn from the facts, the issue of whether an employee was acting within the scope of employment is for the jury.

*Justice*, 208 A.3d at 1068 (emphasis added; citations omitted).

> As [our Supreme] Court has observed,
>
> > [i]n the context of vicarious liability, a principal is **liable to third parties for the frauds**, **deceits**, **concealments**, **misrepresentations**, **torts**, **negligent acts**[,] **and other malfeasances of his agent**, even though the principal did not authorize, justify, participate in[,] or know of such conduct or even if he forbade the acts or disapproved of them, **as long as they occurred within the agent's scope of employment**. This rule of liability is based on the premise that it is more reasonable for a principal, who has placed the agent in the position of trust and confidence, to be the one to suffer from the wrongful act of a third person, as opposed to an innocent stranger.
>
> *Travelers Cas. & Sur. Co. v. Castegnaro*, . . . 772 A.2d 456, 460 (Pa. 2001) (citations omitted).

*McLaughlin v. Nahata*, 298 A.3d 384, 396 (Pa. 2023) (emphasis added).

Section 1107 of the Ethics Act describes the SEC's powers and duties, which include:

> (12) Initiat[ing] an inquiry pursuant to [S]ection 1108(a) [of the Ethics Act, 65 Pa.C.S. § 1108(a)] (relating to investigations by [the SEC]) where a complaint has not been filed but where there is a reasonable belief that a conflict may exist.
>
> (13) Issu[ing] findings, reports[,] and orders relating to investigations initiated pursuant to [S]ection 1108 [of the Ethics Act] which set forth the alleged violation, findings of fact[,] and conclusions of law. An order may include recommendations to law enforcement officials. Any order resulting from a finding that a public official or public employee has obtained a financial gain in violation of this chapter may require the restitution plus interest of that gain to the appropriate governmental body. The [SEC] or the Office of Attorney General shall have standing to apply to the Commonwealth Court to seek enforcement of an order requiring such restitution. This restitution requirement shall be in addition to any other penalties provided for in this chapter.
>
> (14) Hold[ing] hearings, tak[ing] testimony, issu[ing] subpoenas[,] and compel[ling] the attendance of witnesses.

65 Pa.C.S. § 1107.

With respect to investigations, Section 1108 of the Ethics Act states, in pertinent part:

> (a) *Preliminary inquiry.* — Upon a complaint signed under penalty of perjury by any person **or upon its own motion**, the [SEC], through its executive director, shall conduct a preliminary inquiry into any alleged violation of this chapter. The [SEC] shall keep information, records[,] and proceedings relating to a preliminary inquiry confidential. The [SEC] shall, however, have the authority to refer the case to law enforcement officials during a preliminary inquiry or anytime thereafter without providing notice to the subject of the inquiry. . . .

8

. . . .

(c) *Initiation of investigation.* — If a preliminary inquiry establishes reason to believe that this chapter has been violated, the [SEC] may, through its executive director, initiate an investigation to determine if there has been a violation. . . . No investigation may be commenced until the person who is the subject of the investigation has been notified and provided a general statement of the alleged violation or violations of this chapter and other applicable statutes with respect to such investigation. . . .

. . . .

(e) *Findings report.* — The [SEC], upon the completion of an investigation, shall issue a findings report to the subject of the investigation setting forth the pertinent findings of fact. The subject shall have the right to respond to said findings and to request an evidentiary hearing on said matter. The [SEC] shall grant any request for a hearing.

65 Pa.C.S. § 1108 (text emphasis added).

Baloga alleged in the Complaint that Appellees commenced a preliminary inquiry upon their own motion (rather than upon a sworn complaint), that the allegations were meritless, that Appellees failed to sign the investigative complaint, and that Appellees misrepresented witness statements.[8] *See* R.R. at 35a-

---

[8] In the Complaint, Baloga summarizes Appellees' alleged conduct as follows:

[Appellees] materially participated in the procurement, initiation, and/or continuance of the aforementioned civil proceeding against [Baloga] in a grossly negligent manner. In fact, [Appellees] initiated and continued the matter with knowledge that it lacked probable cause and misrepresented testimony in order to manufacture probable cause for a purpose other than that of securing the proper discovery, joinder of parties[,] or adjudication of the claim in which the civil proceeding was based.

[] At no time did [Appellees] reasonably believe in the existence of facts to support their claims at the time of the initiation of the civil proceeding.

R.R. at 40a-41a.

9

40a. However, alleging that Appellees engaged in such conduct is not equivalent to pleading facts that, if true, would demonstrate that the conduct **was beyond the scope of Appellees' statutorily-assigned tasks** for investigating alleged Ethics Act violations. This Court must consider whether, based on the Complaint's allegations, taken as true, and the documents attached thereto,[9] Appellees were acting within the scope of their employment. When evaluating scope of employment, this Court first examines whether the subject conduct "is of the kind [Appellees were] employed to perform[.]" *McGuire*, 285 A.3d at 892 (quoting Restatement (Second) of Agency § 228(a)).

Here, as permitted by Section 1108(a) of the Ethics Act, the SEC "upon its own motion" conducted a preliminary inquiry into an alleged violation that the Borough Council president and vice president reported to the SEC. Consistent with Section 1108(c) of the Ethics Act, Caruso informed Baloga of the allegation, that that SEC commenced an investigation, and of the SEC's preliminary findings. Thereafter, the SEC issued the Findings Report.

Although Baloga alleges in the Complaint that "[a]t no time did [Appellees] reasonably believe in the existence of facts to support their claims at the time of the initiation of the civil proceeding[,]" he does not allege facts demonstrating why Appellees had reason to disbelieve the allegations in the May 10 Letter. R.R. at 41a. Notably, Baloga does not dispute that the driveway exists on his property or that contractors working on a grant-funded Borough roadway project

---

[9] Notably,

> [c]ourts reviewing preliminary objections may consider not only the facts pleaded in the complaint, but also documents or exhibits attached to the complaint, and based upon the averments and documentary support may address challenges to the legal sufficiency of the complaint.

*Diess v. Pa. Dep't of Transp.*, 935 A.2d 895, 903 (Pa. Cmwlth. 2007).

10

installed the driveway with a drainpipe. Baloga merely objects that Appellees did not require the Borough Council president and vice-president to complete a standard Ethics Complaint under oath, an action that the Ethics Act does not require when the SEC acts on its own motion, as it did in this case. *See* 65 Pa.C.S. § 1108(c).

Assuming, *arguendo*, that Baloga's allegation is true and Appellees' actions were either grossly negligent or conducted in bad faith, "frauds, deceits, concealments, misrepresentations, torts, negligent acts[,] and other malfeasances" do not necessarily render such conduct outside the scope of Appellees' employment. *McLaughlin*, 298 A.3d at 396 (quoting *Travelers Cas. & Sur. Co. v. Castegnaro*, 772 A.2d 456, 460 (Pa. 2001)); *see also Sutton v. Bickell*, 220 A.3d 1027 (Pa. 2019); *Minor v. Kraynak*, 155 A.3d 114 (Pa. Cmwlth. 2017).

Under the test described in *McGuire*, this Court must consider whether the subject actions "occurred substantially within the authorized time and space limits[.]" *McGuire*, 285 A.3d at 892 (quoting Restatement (Second) of Agency § 228(a)). However, there is no allegation in the Complaint that Appellees' actions occurred beyond the authorized time and space limits. The *McGuire* test also requires this Court to evaluate whether the challenged actions were "actuated, at least in part, by a purpose to serve the master." *McGuire*, 285 A.3d at 892 (quoting Restatement (Second) of Agency § 228(a)). In his Complaint, Baloga does not attribute any motivation for Appellees' actions to anything other than a purpose to serve the SEC. Instead, Baloga alleges gross negligence. Thus, there are no allegations in Baloga's Complaint that, if true, would demonstrate that Appellees were acting other than in the course and scope of their employment with the SEC. Accordingly, it was not error for the trial court to conclude that Baloga did not allege sufficient facts in the Complaint for an exception to statutory immunity to apply and, in the absence of such facts, dismiss Baloga's Complaint.

11

Baloga next argues that the trial court erred by holding that he failed to plead facts sufficient to state a valid claim for gross negligence under Section 8351 of the Dragonetti Act for wrongful use of civil proceedings.

Section 8351(a) of the Dragonetti Act provides:

*Elements of action.* — A person who takes part in the procurement, initiation[,] or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:

(1) he acts in a **grossly negligent manner or without probable cause** and primarily for a purpose other than that of securing the proper discovery, joinder of parties[,] or adjudication of the claim in which the proceedings are based; and

(2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351(a) (text emphasis added). Section 8352 of the Dragonetti Act states:

A person who takes part in the procurement, initiation[,] or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

(1) reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) believes as an attorney of record, in good faith that his procurement, initiation[,] or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. § 8352.

The Pennsylvania Supreme Court has stated:

> Gross negligence has . . . been consistently recognized as involving something more than ordinary negligence, and is generally described as "want of even scant care" and an "extreme departure" from ordinary care. *Royal Indem. Co. v. Sec. Guards, Inc.*, 255 F.Supp.2d 497, 505 (E.D. Pa. 2003), *quoting Williams v. State Civil Serv. Comm'n*, . . . 306 A.2d 419, 422 ([Pa. Cmwlth.] 1973), *aff'd* . . . 327 A.2d 70 ([Pa.] 1974); *see also* [*In re*] *Scheidmantel*, 868 A.2d [464,] 485 [(Pa. Super. 2005)] (gross negligence is "a lack of slight diligence or care comprising a conscious, voluntary act or omission in 'reckless disregard' of a legal duty and the consequences to another party"). *See also* Black's Law Dictionary 1057 (7th ed. 1999) (gross negligence is a "lack of slight diligence or care" and a "conscious, voluntary act or omission in reckless disregard of a legal duty and the consequences to another party").
>
> . . . .
>
> . . . . [G]ross negligence does not rise to the level of the intentional indifference or "conscious disregard" of risks that defines recklessness, but it is defined as an "extreme departure" from the standard of care, beyond that required to establish ordinary negligence, and is the failure to exercise even "scant care." *Royal Indem. Co.*, 255 F.Supp.2d at 505. *See also* 2 Dan B. Dobbs, The Law of Torts § 140 (gross negligence is "a high, though unspecified degree of negligence, or as courts sometimes say, the failure to use even slight care[]")[.] Thus, gross negligence involves more than a simple breach of the standard of care (which would establish ordinary negligence), and instead describes a "flagrant" or "gross deviation" from that standard. *Bloom* [*v. Dubois Reg. Med. Ctr.*], 597 A.2d [671,] 679 [(Pa. Super. 1991)] (gross negligence involves behavior that is "flagrant, grossly deviating from the ordinary standard of care").

*Feleccia v. Lackawanna Coll.*, 215 A.3d 3, 20-21 (Pa. 2019) (footnote omitted).

Regarding the SEC's investigation, Section 1108 of the Ethics Act provides in relevant part:

(d) *Termination of investigation.* — If an investigation conducted under this chapter indicates that no violation has been committed, the [SEC] shall immediately terminate the investigation and send written notice of such determination to the complainant and the person who was the subject of the investigation.

(e) *Findings report.* — The [SEC], upon the completion of an investigation, shall issue a findings report to the subject of the investigation setting forth the pertinent findings of fact. **The subject shall have the right to respond to said findings and to request an evidentiary hearing on said matter**. **The [SEC] shall grant any request for a hearing**. . . . **Any response to the findings report must either admit or deny by corresponding number and letter the pertinent facts set forth**. **The subject of the investigation shall have access to any evidence intended to be used by the** [SEC] **at the hearing and any exculpatory evidence developed by the** [SEC] **in the course of its investigation**. . . . Hearings conducted upon request shall be instituted within 45 days after the filing of the response.

65 Pa.C.S. § 1108 (text emphasis added).

Baloga argues that he

pled specifically that Appellees consciously, voluntarily, and recklessly disregarded their legal duties and the consequences to Baloga. . . . Appellees began the investigation on mere suspicion instead of following their legal duty to verify the allegations under oath. R.[R. at] 35a [] ¶¶ 11-15; R.[R. at] 46a-47a. Appellees issued the [] Findings Report without identifying an author contrary to Pennsylvania law. R.[R. at] 36a [] ¶¶ 18-19; R.[R. at] 54a-95a. In order to prosecute Baloga, Appellees grossly misrepresented the facts learned in their investigation, in which none of the fifteen (15) witnesses accused Baloga of the alleged unethical conduct. R.[R. at] 38a-40a [] ¶¶ 30-41; R.[R. at] 62a [] ¶¶ 24, 24(a), 24(c); R.[R. at] 63a [] ¶¶ 25, 25(b); R[.R. at] 126a-142a; R.[R. at] 143a-162a; R.[R. at] 163a-200a.

Appellees then required Baloga sign a one-sided [C]onsent [A]greement that contained false information. R.[R. at]

14

37a [] ¶¶ 21-24. Appellees' insistence on continuing the prosecution in the absence of evidence further caused Baloga to retain counsel, who was finally able to stop Appellees' misconduct in early 2021 by demanding an evidentiary hearing and issuing subpoenas requiring the disclosure of the author of the [C]omplaint. R.[R. at] 37a-[]38a [] ¶¶ 25-29; R.[R. at] 96a-201a; R.[R. at] 202a-211a; R.[R. at] 212a-216a.

Baloga Br. at 21-22.

However, accepting them as true, as this Court must, those alleged facts do not support a conclusion that Appellees' conduct was grossly negligent. Contrary to Baloga's assertion, the Ethics Act does not require that the SEC obtain a sworn complaint to initiate an inquiry. The SEC may proceed on its own motion. *See* 65 Pa.C.S. § 1108(a). Further, there is nothing in the Ethics Act that requires that the author of an Investigative Complaint/Findings Report be identified therein. Even if the Ethics Act required such identification, its omission would not constitute gross negligence.

Relative to Baloga's contention that Appellees "grossly misrepresented the facts learned in their investigation[,]" and that "none of the [15] . . . witnesses accused Baloga of the alleged unethical conduct," Baloga Br. at 21, Appellees were permitted to consider the sworn witness statements and other evidence gathered in their investigation, weigh the witnesses' credibility, and reach conclusions on the facts. *See* 65 Pa.C.S. § 1108(e). Although the witness statements do not include accusations of unethical conduct, certain facts contained therein corroborate some of the SEC's allegations. The Findings Report is, in effect, a complaint. *See id*. Consistent therewith, "[i]n Pennsylvania, as a fact-pleading state, a complaint must apprise the defendant of the nature and extent of the plaintiff's claim so that the defendant has notice of **what the plaintiff intends to prove at trial** and may prepare to meet such proof with his own evidence." *Clark v. Se. Pa. Transp. Auth.*, 691 A.2d 988, 991 n.6 (Pa. Cmwlth. 1997) (emphasis added).

15

Here, the May 10 Letter stated, in pertinent part:

> On May 4th around 5:30 P[.]M[.], James O'Hara [(O'Hara)], owner of O'Hara Trucking returned a call from Council Member Michael Flynn [(Flynn)] who inquired about the incident. O'Hara indicated he didn't know anything about the driveway and drain[]pipe access but would check into it. On the afternoon of May 9, 2018, O'Hara Trucking employee Bob Opalka [(Opalka)] . . . called . . . Flynn and confirmed that the O'Hara [Trucking] work crew who was working on the grant-funded project completed the work for . . . Baloga on *his* private property at no charge. The crew installed a large drain[]pipe that provided access to Baloga's driveway from the road. The crew also used materials from the grant-funded project to pave Baloga's driveway. Opalka related to Flynn that Baloga was a "nice guy" and "had been watching our equipment."

R.R. at 45a (emphasis added).

Such allegations involve precisely the type of restricted activities the SEC is charged with investigating. *See* Section 1103 of the Ethics Act, 65 Pa.C.S. § 1103. The Ethics Act permits the SEC to conduct a preliminary inquiry and investigation and issue an investigative complaint and findings report which the subject of the investigation may challenge and request a hearing. *See* 65 Pa.C.S. § 1108. At its essence, Baloga's Complaint challenges the core of the SEC's investigative function. Baloga alleges therein that the Appellees were grossly negligent in their investigation and in reaching their factual findings. Nonetheless, Section 1108(c) of the Ethics Act merely requires "reason to believe that [the Ethics Act] has been violated" to proceed with an investigation. 65 Pa.C.S. 1108(c). The Ethics Act requires the SEC to issue factual findings, but does not require that the factual findings be undisputed. *See id.* That the subject disputes the SEC's factual findings is not alone sufficient to establish gross negligence by the investigators.

16

Instead, the Ethics Act permits the subject of the investigation to challenge the factual findings and demand supporting evidence in a hearing.

Finally, Baloga did not allege in the Complaint that Appellees "*required* Baloga sign a one-sided [C]onsent [A]greement that contained false information[,]" Baloga Br. at 21 (emphasis added), but, rather, that "[Baloga] signed a "Consent Agreement[,]" the terms of which were dictated exclusively by . . . Frankenburger[.]" R.R. at 37a. None of Baloga's allegations, if true, reflect "an 'extreme departure' from the standard of care, beyond that required to establish ordinary negligence, and is the failure to exercise even 'scant care.'" *Feleccia*, 215 A.3d at 20 (quoting *Royal Indem. Co.*, 255 F.Supp.2d at 505). Accordingly, the trial court did not err by holding that Baloga failed to plead facts sufficient to state a valid claim for gross negligence under Section 8351 of the Dragonetti Act for wrongful use of civil proceedings.

For all of the above reasons, the trial court's order is affirmed.[10]

_____
ANNE E. COVEY, Judge

---

[10] Baloga requests that if this Court affirms the trial court's order, that it permit Baloga to amend his Complaint. This Court declines to grant Baloga's request. When Baloga chose not to file an amended complaint and appealed from the trial court's order by filing a praecipe with the prothonotary, he effectively dismissed the original complaint with prejudice, and converted an interlocutory order into a final and appealable order. *See Hionis; see also Horan v. Newingham* (Pa. Cmwlth. No. 2622 C.D. 2015, filed Oct. 24, 2016), slip op. at 6 (emphasis added) ("[A] plaintiff who chooses not to file an amended complaint may appeal by filing a praecipe with the prothonotary that **effectively dismisses the original complaint with prejudice**, **thereby converting an interlocutory order into a final and appealable order**.") After utilizing this method to obtain appellate review of what had been an interlocutory order, Baloga may not, upon pursuing an unsuccessful appeal, attempt to amend his Complaint.

This Court's unreported memorandum opinions issued after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). This Court cites to *Horan* for its persuasive value.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Baloga,             :
          Appellant      :
                               :
          v.                :
                               :
Brian D. Jacisin, Robert     :
Caruso, Jonathan Fry,     :   No. 1447 C.D. 2023
and Jeffrey Frankenburger :

## O R D E R

AND NOW, this 13th day of May, 2025, the Dauphin County Common Pleas Court's August 15, 2023 order is affirmed.

 

_____
ANNE E. COVEY, Judge